BETTY M. McLEOD, PLAINTIFF v. NATIONWIDE MUTUAL INSURANCE CO. AND ALL-STATE INSURANCE CO., DEFENDANTS

No. 9211SC756

(Filed 21 June 1994)

1. **Insurance § 496 (NCI4th)— garage policy—employee owned vehicle with dealer tags—coverage not mandated by Financial Responsibility Act**

    The Financial Responsibility Act did not mandate that a garage policy provide liability coverage where Sanford Toyota permitted an employee to use dealer tags while attempting to sell an automobile which he personally owned and which did not have tags, the employee allowed someone else to drive the vehi-

cle, an accident occurred when that person crossed the center line, a jury absolved Sanford Toyota and the employee of responsibility but returned a verdict against the driver, plaintiff sought recovery under a garage policy issued to Sanford Toyota by defendant Nationwide and under uninsured coverage provided by Allstate, and summary judgment for Nationwide was denied. It is undisputed that Sanford Toyota did not hold legal title to the auto involved in the collision and there is no evidence indicating the dealership promoted the sale of the vehicle or otherwise used the vehicle for its business purposes. Dealer plates constituted the sole relationship between the car and the dealership; standing alone, this connection is too weak to impose mandatory liability coverage on the basis of the owner's policy provisions of the Financial Responsibility Act. N.C.G.S. § 20-279.21(b).

**Am Jur 2d, Automobile Insurance §§ 20 et seq.**

2. **Insurance § 536 (NCI4th)— garage policy—employee owned vehicle with dealer tags—no coverage**

There was no coverage under a garage policy for an automobile accident where Sanford Toyota permitted an employee to use dealer tags while attempting to sell an automobile which he personally owned and which did not have tags, the employee allowed someone else to drive the vehicle, an accident occurred when that person crossed the center line, a jury absolved Sanford Toyota and the employee of responsibility but returned a verdict against the driver, plaintiff sought recovery under a garage policy issued to Sanford Toyota by defendant Nationwide, and summary judgment was granted for plaintiff. The term "garage operations" as used in the policy is unambiguous both as to definition and scope of coverage. There is no indication that the automobile was being used in Sanford Toyota's business, it cannot reasonably be asserted that "ownership" and "use" have any application since Sanford Toyota neither owned nor used the automobile, plaintiff has made no contention that Sanford Toyota was maintaining the vehicle, permitting dealer tags to be affixed to an employee's vehicle was in no way necessary to Sanford Toyota's business, and there was no incidental business purpose furthered by the permissive use of the tags. Nationwide is entitled to judgment as a matter of law.

**Am Jur 2d, Automobile Insurance §§ 225-228.**

**Liability insurance of garages, motor vehicle repair shops and sales agencies, and the like. 93 ALR2d 1047.**

Appeal by defendant Nationwide from order entered 5 May 1992 by Judge Wiley F. Bowen in Lee County Superior Court. Heard in the Court of Appeals 3 June 1993.

*J. Douglas Moretz, P.A., by Beverly D. Basden, for plaintiff-appellee.*

*Bryan, Jones, Johnson & Snow, by Robert C. Bryan and Dwight W. Snow, for defendant-appellant Nationwide.*

JOHN, Judge.

Defendant Nationwide contends the trial court erred by: (1) granting plaintiff's motion for summary judgment; and (2) denying Nationwide's motion for summary judgment. Defendant's arguments are persuasive, and we therefore reverse the trial court and remand with direction that summary judgment be entered in favor of defendant Nationwide.

The parties have stipulated there are no factual issues and the questions to be decided are purely legal in nature. The facts giving rise to this appeal are as follows: In May 1987, John Green was an employee of P.M. Concepts, Inc. d/b/a Toyota Sanford (Sanford Toyota). Green's employer permitted him to use dealership license tags. He was attempting to sell a 1977 Pontiac (the Pontiac) automobile which he personally owned and which did not have a license plate. Green affixed one of Sanford Toyota's dealership tags to the Pontiac.

Although the exact date and reason for the use are unclear, at some point Green began allowing Tom Skinner to drive his Pontiac while the dealership tags were attached to the vehicle. On 10 May 1987, Skinner crossed the centerline of a highway and struck a van, injuring plaintiff Betty McLeod who was a passenger in the van. Prior to the collision, officers of Sanford Toyota had witnessed Skinner operating the Pontiac on Toyota's premises with dealership tags attached.

Plaintiff sued Skinner's estate, John Green, and Sanford Toyota alleging negligence. On 20 September 1991, a jury found Skinner negligent and awarded plaintiff $95,000; however, the jury absolved Green and Sanford Toyota of liability. Thereafter, plaintiff sought

recovery of the $95,000 pursuant to: (1) a Nationwide garage policy issued to Sanford Toyota (the garage policy); and (2) the uninsured motorist (UM) coverage provided by her Allstate policy. Both insurance companies denied coverage and plaintiff therefore filed the present lawsuit against Nationwide and Allstate.

All parties moved for summary judgment. On 5 May 1992, the trial court entered an order which granted plaintiff's motion for summary judgment against Nationwide—thereby ordering Nationwide to pay $95,000 under the garage policy. By means of this same order, the trial court ruled that Allstate was secondarily liable in the amount of $25,000. On 5 June 1992, *nunc pro tunc* 5 May 1992, the trial court entered an order denying Nationwide's motion for summary judgment.

I.

Before examining the merits of defendant Nationwide's appeal, we deem it appropriate to address several collateral matters.

*First*, the automobile collision which resulted in plaintiff's injuries has been the subject of a previous appeal. In *Johnson v. Skinner*, 99 N.C. App. 1, 392 S.E.2d 634, *disc. review denied*, 327 N.C. 429, 395 S.E.2d 680 (1990), we reviewed a judgment which awarded plaintiff John Johnson $750,000 based upon the negligent acts of defendants Skinner, Green, and Sanford Toyota. Betsy McLeod, the plaintiff in the case *sub judice*, was a passenger in John Johnson's vehicle.

*Second*, we note plaintiff originally appealed that portion of the trial court's 5 May 1992 order which limited Allstate's liability to $25,000. Plaintiff's appeal presented questions concerning the "stacking" of UM coverage under her Allstate coverage. After our Supreme Court issued its opinion in *Lanning v. Allstate Insurance Co.*, 332 N.C. 309, 420 S.E.2d 180 (1992), plaintiff moved to dismiss her appeal against defendant Allstate; on 4 May 1993, this motion was allowed. Consequently, only defendant Nationwide's appeal is at issue.

*Third*, Nationwide has argued in its appellate brief that the trial court erred by *denying its motion for summary judgment*. Denial of a motion for summary judgment is an *interlocutory* order from which there is ordinarily no right to appeal. *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 758, 325 S.E.2d 223, 230 (1985). After reviewing the parties' briefs and the nature of the issues presented, we conclude that our review of the trial court's order will expedite a deci-

sion in the public interest and serve the interests of judicial economy. Accordingly, we treat Nationwide's attempted appeal of the court's denial of its motion for summary judgment as a petition for writ of certiorari, which we grant. *See National Fruit Product Co. v. Justus*, 112 N.C. App. 495, 498, 436 S.E.2d 156, 157 (1993), *disc. review denied*, 335 N.C. 771, 442 S.E.2d 519 (1994).

Only one question is presented herein: *Did the garage policy provide liability coverage for Tom Skinner's negligent use of the Pontiac?* The answer is "no," and therefore the trial court should have allowed defendant Nationwide's motion for summary judgment.

## II. *The Financial Responsibility Act*

[1] Our review necessarily begins with an examination of the applicable statutes relating to liability insurance coverage, *i.e.*, the *Motor Vehicle Safety and Financial Responsibility Act* (the FRA), N.C.G.S. § 20-279.1 to -279.39 (1983) (current version at G.S. § 20-279.1 to -279.39 (1993)). This analysis is required since the minimum FRA coverage is written into every automobile liability policy as a matter of law, and the statute controls if policy provisions conflict with provisions of the FRA. *Brown v. Truck Ins. Exchange*, 103 N.C. App. 59, 64, 404 S.E.2d 172, 175, *disc. review denied*, 329 N.C. 786, 408 S.E.2d 515 (1991). Stated otherwise, every automobile liability policy in North Carolina *must* provide the minimum liability coverage required by the FRA, and any policy language which attempts less coverage is ineffective. Although garage policies are not specifically addressed within the FRA, such policies must nevertheless furnish the minimum liability coverage mandated by G.S. § 20-279.21. *See United Services Auto. Assn. v. Universal Underwriters Ins. Co.*, 332 N.C. 333, 338, 420 S.E.2d 155, 158 (1992).

G.S. § 20-279.21 provides for two types of liability policies: *owner's* and *operator's*. G.S. § 20-279.21(a); *Ohio Casualty Ins. Co. v. Anderson*, 59 N.C. App. 621, 622, 298 S.E.2d 56, 57 (1982), *disc. review denied*, 307 N.C. 698, 301 S.E.2d 101 (1983). Garage policies, such as the one *sub judice*, are generally viewed as *owner* policies and consequently must satisfy the minimum requirements of G.S. § 20-279.21(b). *See United Services*, 332 N.C. at 338, 420 S.E.2d at 158; *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 352, 152 S.E.2d 436, 444 (1967). In pertinent part, this statutory provision provides:

(b) Such owner's policy of liability insurance:

(1)   Shall designate by explicit description or by appro-
      priate reference all motor vehicles with respect to
      which coverage is thereby to be granted;

(2)   Shall insure the person named therein and any
      other person, as insured, using any such motor
      vehicle or motor vehicles with the express or
      implied permission of such named insured, or any
      other persons in lawful possession, against loss
      from the liability imposed by law for damages . . . .

G.S. § 20-279.21(b).

The proper interpretation of G.S. § 20-279.21(b), as with any
statute, presents a question of law. *See Brooks, Com'r. of Labor v.
Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988). The
cardinal principle of statutory interpretation is to ensure that legisla-
tive intent is accomplished. *Harris v. Nationwide Mut. Ins. Co.*, 332
N.C. 184, 191, 420 S.E.2d 124, 128 (1992). Accordingly, "a court must
consider the act as a whole, weighing the language of the statute, its
spirit, and that which the statute seeks to accomplish." *Shelton v.
Morehead Memorial Hospital*, 318 N.C. 76, 81-82, 347 S.E.2d 824, 828
(1986).

Applying these principles to the case *sub judice*, we conclude the
FRA does not mandate that the garage policy provide liability cover-
age for Skinner's use of the Pontiac. In making this determination,
our focus is upon section (b)(2) of the statute which states an
owner's policy "[s]hall insure the person named therein . . . using *any
[designated] motor vehicle . . .* against loss from the liability
imposed by law for damages . . . ." [emphasis added]. Viewed in iso-
lation, this sub-section arguably requires liability coverage for any
vehicle *named* in the policy—including even non-owned vehicles
over which the named insured exercises only tenuous control. How-
ever, individual sections of a statute "must be interpreted in the con-
text of the whole[,]" *Overcash v. Statesville City Bd. of Educ.*, 83
N.C. App. 21, 24, 348 S.E.2d 524, 526 (1986), and "should be construed
contextually and harmonized if possible to avoid absurd . . . conse-
quences." *In re King*, 79 N.C. App. 139, 142, 339 S.E.2d 87, 89 (1986).
Thus, the phraseology "any [designated] motor vehicle" must be con-
strued with reference to the subject-matter of G.S. § 20-279.21(b),
which is: "*an owner's policy.*"

McLEOD v. NATIONWIDE MUTUAL INS. CO.

[115 N.C. App. 283 (1994)]

The term "owner," for purposes of the mandatory provisions of the Financial Responsibility Act, is defined by N.C.G.S. § 20-4.01(26) (1983) (current version at G.S. § 20-4.01(26) (1993)). *Jenkins v. Aetna Casualty and Surety Co.*, 324 N.C. 394, 397, 378 S.E.2d 773, 775 (1989). "Unless the context requires otherwise," G.S. § 20-4.01, an "owner" is a "person holding the legal title to a vehicle . . . ." G.S. § 20-4.01(26); *see also Jenkins*, 324 N.C. at 397-401, 378 S.E.2d at 775.

In the case *sub judice*, it is undisputed that Sanford Toyota (the named insured) did not hold legal title to the Pontiac which was involved in the collision; rather the automobile was owned by one of its employees. There is no evidence indicating the dealership actively promoted the sale of this Pontiac, or otherwise used the vehicle for its business purposes. Instead, dealer plates affixed thereto constituted the sole relationship between the Pontiac and the dealership. Standing alone, this attenuated connection is simply too weak to impose mandatory liability coverage on the basis of the "owner's policy" provisions of the FRA.

## III. *The Policy*

[2] Our analysis, however, does not terminate with the FRA. Liability coverage which is not statutorily mandated is voluntary in nature, *Aetna Casualty and Surety Co. v. Younts*, 84 N.C. App. 399, 406, 352 S.E.2d 850, 853-54, *disc. review denied*, 319 N.C. 671, 356 S.E.2d 774 (1987), and must therefore accrue under the terms of the insurance policy in question. *Younts v. Insurance Co.*, 281 N.C. 582, 585, 189 S.E.2d 137, 139 (1972). The burden is on the person claiming coverage to show the collision is covered under provisions of the policy. *See Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 188, 314 S.E.2d 552, 554, *disc. review denied*, 311 N.C. 761, 321 S.E.2d 142 (1984).

An insurance policy is a contract, and its provisions, where not contrary to the law, govern the distribution of any insurance proceeds. *Barber v. Woodmen of the World Life Ins. Society*, 88 N.C. App. 666, 672, 364 S.E.2d 715, 719 (1988). "When reviewing an insurance policy, this Court must examine the contract as a whole and effectuate the intent of the parties." *N.C. Farm Bureau Mutual Ins. Co. v. Walton*, 107 N.C. App. 207, 209, 418 S.E.2d 837, 839 (1992). Any question as to the meaning of the language used in a policy is a question of law for the court to resolve. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512, 428 S.E.2d 238, 241 (1993).

Because the intention of the parties is paramount, the court must use definitions contained in the policy to determine the meaning of words or phrases detailing the scope of coverage. *Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 156, 426 S.E.2d 451, 453, *disc. review denied*, 333 N.C. 790, 431 S.E.2d 22 (1993). In the absence of policy definitions, the court must define a term or phrase "consistent with the context in which it is used and the meaning accorded it in ordinary speech." *Maddox v. Insurance Co.*, 303 N.C. 648, 652, 280 S.E.2d 907, 909 (1981). In doing so, courts are encouraged to use "standard, nonlegal dictionaries" as a guide. *See C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng. Co.*, 326 N.C. 133, 152, 388 S.E:2d 557, 569 (1990).

Any ambiguities, however, as to the definition of policy terms or the scope of coverage are to be resolved in favor of coverage. *Maddox*, 303 N.C. at 650, 280 S.E.2d at 908. This is because the insurance company prepared the policy and chose the language contained therein. *West American Insurance Co. v. Tufco Flooring East*, 104 N.C. App. 312, 320, 409 S.E.2d 692, 697 (1991), *disc. review denied*, 332 N.C. 479, 420 S.E.2d 826 (1992). An ambiguity exists when the language used in the policy is susceptible to different, and perhaps conflicting, interpretations. *Id.* at 320, 409 S.E.2d at 697. However, the aforementioned rules of construction cannot be used to rewrite an unambiguous policy, *i.e.*, the court cannot extend coverage to collisions not bargained for in the agreement. *See C.D. Spangler*, 326 N.C. at 142, 388 S.E.2d at 563. (Citations omitted).

In addition, we are examining herein both plaintiff's and defendant Nationwide's motions for summary judgment. Our rules of civil procedure direct that summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). The burden of establishing a lack of any triable issue resides with the movant, and all inferences of fact will be drawn in favor of the non-movant. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985).

Mindful of these principles of civil procedure and insurance policy construction, we turn now to an examination of the garage policy in order to determine whether plaintiff's injuries were covered.

**McLEOD v. NATIONWIDE MUTUAL INS. CO.**

[115 N.C. App. 283 (1994)]

In pertinent part, the Nationwide garage policy provides:

> We will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies caused by an **accident** and resulting from **garage operations**.

According to Nationwide, there are two reasons no coverage exists for plaintiff's injuries. *First,* the collision which caused plaintiff's injuries was not the result of "garage operations." *Second,* the policy provides coverage only if the auto accident is with an "insured"—and Skinner (the driver of the Pontiac at the time of the accident) was not an insured under the policy.

Regarding Nationwide's first argument, the term "garage operations" is defined in the garage policy as:

> [T]he ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. Garage operations includes the ownership, maintenance or use of the autos indicated in Part II as covered autos. Garage operations also include all operations necessary or incidental to a garage business.

As to the *first sentence* of this definition, the American Heritage Dictionary (2d College ed. 1982) defines "business" as: "[c]ommercial, industrial, or professional dealings . . . ." This definition is consistent with both ordinary speech and the context in which the term is used in the garage policy. However, under any view of the evidence, there is simply no indication the Pontiac was being used in Sanford Toyota's "business." The record shows at best only that dealer tags were placed on Green's Pontiac for Green's personal use, and in order to facilitate its sale. Green's status as an employee of Sanford Toyota, standing alone, does not raise a question of fact as to whether the Pontiac was being used in Sanford Toyota's business. *See, e.g., Peirson v. Insurance Co.,* 249 N.C. 580, 583-85, 107 S.E.2d 137, 138-40 (1959) (even though vehicle used occasionally in garage business, no coverage under garage policy for garage owner's use of vehicle to attend unrelated social function).

Under the *second sentence* of the definition, "garage operations" includes Sanford Toyota's "ownership, maintenance or use" of the vehicles designated as "covered autos" in the policy. The policy defines "covered auto" as "any auto"; for purposes of summary judgment, this broad definition encompasses Green's Pontiac. According-

ly, we turn to the phraseology "ownership, maintenance or use" to determine whether plaintiff's collision resulted from garage operations as defined in the second sentence.

It cannot reasonably be asserted that "ownership" and "use" have any application since Sanford Toyota neither *owned* nor *used* the Pontiac. Concerning "maintenance," we note plaintiff has made no contention that Sanford Toyota was "maintaining" the vehicle. Moreover, even construing the evidence in plaintiff's favor, we determine Sanford Toyota did not conduct any "maintenance" on the Pontiac.

The American Heritage Dictionary defines maintenance as "the work of keeping something in proper condition." There is no evidence Sanford Toyota was involved in inspecting or repairing the vehicle at the time of the collision—activities ordinarily associated with maintenance of an automobile by a garage. Plaintiff has produced nothing to indicate the dealership expended any labor to keep the Pontiac operable; rather, the record discloses at most that Sanford Toyota permitted its dealer tags to be affixed to the Pontiac. This isolated act, standing alone, is insufficient to constitute "maintenance."

Because the first two sentences of the definition have no application, we consider the *third and final sentence* which designates "garage operations" as "all operations necessary or incidental to a garage business." Permitting dealer tags to be affixed to an employee's vehicle was in no way "necessary" to Sanford Toyota's business; indeed, at the time of the collision in question, doing so constituted a criminal misdemeanor. N.C.G.S. § 20-79(d) (1983) (amended 1989 and 1993). Further, such use was not "incidental" to dealership business. For example, there is no evidence Green required the dealer tag on the Pontiac in order to travel to and from work. Nor is there any indication Skinner was a prospective dealership customer such that his use of the tag furthered customer goodwill. In the light most favorable to plaintiff, the evidence shows only that dealership officers, for no apparent reason, acquiesced in dealership tags being placed on the Pontiac. From the evidence presented, we can conceive of no incidental business purpose furthered by Sanford Toyota's permissive action. *See, e.g., Lambert v. Northwestern National Insurance Co.*, 769 P.2d 1152, 1155-56 (Idaho Ct. App. 1989) (uses of vehicle covered under garage operations provision include only those "germane to the attending, servicing, repairing, parking or storage of the vehicle").

In summary, we conclude that the term "garage operations" as used in the garage policy is unambiguous both as to definition and scope of coverage, and that, as a matter of law, plaintiff's injuries were not the result of Sanford Toyota's "garage operations." Thus, the garage policy did not provide coverage for plaintiff's injuries, and defendant Nationwide is entitled to judgment as a matter of law.

Since plaintiff's collision was not the result of "garage operations" (and was therefore not covered under the garage policy), we need not examine whether Skinner was an "insured" at the time of the collision.

Based on the foregoing, we reverse the trial court and remand with instruction that summary judgment be entered in favor of defendant Nationwide.

Reversed and remanded.

Judges WELLS and COZORT concur.