NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, PLAINTIFF v. ROBERT BOYD WEAVER, JR. AND WEAVER'S AUTO PARTS AND GARAGE, INC., DEFENDANTS

No. COA98-1310

(Filed 20 July 1999)

**Insurance— garage—shooting during repossession—no coverage**

Summary was properly granted for plaintiff in a declaratory judgment action to determine whether there was coverage under a "garage operations" policy for acts alleged in a wrongful death action which arose from a shooting during the recovery of a car which had been held until payment of a repair bill. Since defendants had available legal remedies but instead attempted to repossess the car by means not authorized by law, defendants' actions were not necessary or incidental to the garage operations.

Appeal by defendants from judgment entered 30 June 1998 and filed 1 July 1998 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 June 1999.

*Caudle & Spears, P.A., by Harold C. Spears and Christopher J. Loebsack, for plaintiff-appellee.*

*Bailey, Patterson, Caddell, Hart, Milliken & Bailey, P.A., by Martha L. Ramsay, for defendants-appellants.*

WALKER, Judge.

Defendant Weaver and his father own an automotive parts and repair company, Weaver's Auto Parts and Garage, Inc. (the Garage), located in Charlotte, North Carolina. Defendant Weaver was in charge of managing and operating the Garage on a daily basis. On 23 June 1993, James Lee Grice contacted defendant Weaver about getting repair work done on his 1986 Camaro. The Camaro was towed to the Garage and the repair work was completed. Grice attempted to retrieve the Camaro on several occasions, but failed to pay the bill for the complete repairs and was informed that the Camaro would not be released until full payment was made. On 14 October 1993, Grice tricked an employee of the Garage into giving him the Camaro without having paid the repair bill. Defendant Weaver called the police and reported the Camaro stolen.

At approximately 11:00 p.m. on 17 October 1993, Dan Constance, defendant Weaver's friend, arrived at defendant Weaver's house and told him he had located the Camaro in Mt. Holly, North Carolina. Defendant Weaver decided to go to Mt. Holly that night to retrieve the Camaro because he believed his chances of recovering the Camaro would be greatly reduced if he waited until the morning. Defendant Weaver then assembled a group of seven people to accompany him to recover the Camaro. Only one of the people was an employee of the Garage. Defendant Weaver had in his possession a .357 Magnum revolver when they went to Mt. Holly. Two of the other men accompanying defendant Weaver also carried weapons. The group left in two pick-up trucks and defendant Weaver's wrecker.

The Camaro was found parked off the road where it had been seen earlier by Constance, near an abandoned house trailer. Without any headlights or warning lights on, the wrecker was backed up to the Camaro. An employee of defendant Weaver started to hook up the Camaro and defendant Weaver walked to the front of the wrecker with the gun in his hand. Grice then emerged from the trailer and ran towards defendant Weaver. Grice pushed and threatened defendant Weaver. Defendant Weaver raised his gun over his head as he blocked Grice from getting into the Camaro. Defendant Weaver demanded that Grice pay the repair bill that was owed on the Camaro and a struggle ensued. At some point, defendant Weaver cocked the hammer on his revolver and yelled to Grice that the gun was cocked. Grice continued to push and struggle with defendant Weaver. Grice then managed to get to the Camaro and unlock and open the driver's side door. Defendant Weaver reached across the Camaro door with his right hand and grabbed Grice's left shoulder. Grice swung around and grabbed defendant Weaver's left hand. The two men struggled and defendant Weaver's gun fired, killing Grice.

On 17 October 1995, Grice's estate brought a wrongful death action against defendants. On 11 October 1996, plaintiff filed a declaratory judgment action against defendants to determine whether there was coverage under the terms of the insurance policy it issued to defendants for "garage operations" for the acts complained of in the wrongful death action. Plaintiff and defendants both filed motions for summary judgment. On 1 July 1998, the trial court granted summary judgment for plaintiff. The trial court concluded "the definition of 'garage operations' contained in the policy is controlling" and "[p]laintiff's contract of insurance does not provide coverage. . . ." The trial court did not address whether coverage under the

policy was excluded because Grice's "bodily injury" and subsequent death were "expected or intended." On appeal, defendants contend the trial court erred in denying defendants' motion for summary judgment and granting plaintiff's motion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." *Thompson v. Three Guy Furniture Co.*, 122 N.C. App. 340, 344, 469 S.E.2d 583, 585 (1996) (*quoting* N.C. Gen. Stat. § 1A-1, Rule 56(c)). The burden of proving the lack of a triable issue of fact is on the party moving for summary judgment. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). The evidence is viewed in the light most favorable to the nonmoving party. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 666, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). Defendants do not contend there remain triable issues of fact; however, they contend they were entitled to summary judgment as a matter of law.

The Garage policy provided coverage for liability resulting from "garage operations" which are defined as follows:

> [T]he ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." "Garage operations" also includes all operations necessary or incidental to a garage business.

Defendant Weaver argues that his actions to recover the Camaro were necessary to the business of the Garage and that he could not afford the lost profits from stolen property. Defendants further contend that under the policy, a finding that an employee was within the scope of his employment at the time of the accident requires that the employee was engaged in garage operations as defined by the policy. Thus, as a result, the actions taken to retrieve Grice's Camaro were "necessary or incidental to garage business."

We first look to see if the actions of defendant Weaver in attempting to retrieve the Camaro were "necessary" to the operations of the Garage. "Necessary" has been defined by our Supreme Court as a

thing that is "indispensable to some purpose; something that one cannot do without; a requisite, an essential." *Pierson v. Insurance Co.*, 249 N.C. 580, 583, 107 S.E.2d 137, 139 (1959) (*quoting Storm v. Wrightsville Beach*, 189 N.C. 679, 128 S.E. 17, 18 (1925)). Defendant Weaver had a valid possessory lien on the Camaro pursuant to N.C. Gen. Stat. § 44A-2(d) (Cum. Supp. 1998) since Grice owed the repair bill. Defendant Weaver continued to have a valid possessory lien on the Camaro since he did not voluntarily relinquish possession of the Camaro. *See* N.C. Gen. Stat. § 44A-3 (1995). However, N.C. Gen. Stat. § 44A-6.1(a) (1995) addresses steps to be taken by a lienor where possession of a vehicle was not voluntarily released:

> When a lienor involuntarily relinquishes possession of the property and the property upon which the lien is claimed is a motor vehicle or vessel, the lienor may institute an action to regain possession of the motor vehicle or vessel in small claims court any time following the lienor's involuntary loss of possession and following maturity of the obligation to pay charges.

Plaintiff contends that the forcible repossession of a car by a group of men armed with deadly weapons does not, as a matter of law, fall within the policy definition of "garage operations." Plaintiff cites *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 285, 444 S.E.2d 487, 489, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994) (where the auto dealer employer permitted dealer tags to be affixed to an employee's vehicle which was subsequently involved in a collision). In *McLeod*, 115 N.C. App. at 291, 444 S.E.2d at 492-93, the employer had a policy with the defendant covering "garage operations." The employee's vehicle was neither used nor owned by the dealership and this Court determined that placing dealer tags on an employee's car was not "necessary" to garage operations. *Id.* at 292, 444 S.E.2d at 493. This Court noted that those actions were, in fact, a criminal misdemeanor. *Id.* Similar to *McLeod*, defendant was not acting in a manner authorized by law when he attempted to repossess the Camaro.

Defendant Weaver also argues that his actions in retrieving the Camaro were "incidental" to "garage operations" and cites *Lumbermens Mut. Cas. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 70 N.C. App. 742, 321 S.E.2d 10 (1984) for support. In that case, a service station employee of the defendant aided a customer in starting a stalled truck along a highway. *Id.* at 744, 321 S.E.2d at 11. As a result of the assistance, an employee of the plaintiff was struck by the

truck and injured. *Id.* The policy defined garage operations as "the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto." *Id.* This Court found that the accident was "a natural consequence" of the business of operating a service station and that it would be "patently unreasonable to expect that a service station owner would not help a customer start a vehicle the owner had just serviced." *Id.* at 746, 321 S.E.2d at 12. Based on the plain meaning of the word "incidental," this Court upheld the determination of the trial court that the policy issued by the defendant provided coverage for an employee assisting a customer, despite the fact that the aid was rendered to "obtain or maintain good will" and for no extra charge. *Id.*

However, we conclude that since defendants had available legal remedies, but instead attempted to repossess the Camaro by means not authorized by law, defendants' actions were not "necessary or incidental" to the "garage operations." Thus, the trial court properly determined that plaintiff's contract of insurance did not provide coverage for the conduct complained of in the wrongful death action. We affirm the order granting summary judgment for the plaintiff.

Affirmed.

Judges McGEE and EDMUNDS concur.