Clark v. Burnette, 2022 NCBC 17.

STATE OF NORTH CAROLINA

WAKE COUNTY

ANDREW CLARK,

Plaintiff,

v.

JARED BURNETTE and JBAC
PROPERTIES, LLC,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 8565

**ORDER AND OPINION ON MOTION
FOR ENTRY OF FINAL JUDGMENT**

THIS MATTER comes before the Court on Jared Burnette and JBAC
Properties, LLC's Motion for Entry of Final Judgment (ECF No. 92).

The Court, having considered the motion, the briefs, the arguments of counsel,
and all applicable matters of record, CONCLUDES that the motion should be
GRANTED for the reasons set forth below.

> *Vann Attorneys, PLLC, by Ian S. Richardson and Barker Richardson,
> PLLC, by Daniel T. Barker for Plaintiff Andrew Clark.*
>
> *Williams Mullen, by Camden R. Webb, Alexander M. Gormley, and
> Caitlin M. Poe for Defendants Jared Burnette and JBAC Properties,
> LLC.*

Davis, Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

1.     This dispute arises out of a lawsuit filed by Andrew Clark against Jared
Burnette and JBAC Properties, LLC ("JBAC").  (ECF No. 3, at p. 1.)  Clark and
Burnette are the member-managers and equal co-owners of JBAC.  (ECF No. 40.2, at
p. 2, 19.)  On 25 June 2019, Clark initiated this action by filing a Complaint in Wake

County Superior Court in which he asserted the following claims: breach of contract against Burnette; declaratory judgment against Burnette and JBAC; quantum meruit against Burnette; and judicial dissolution of JBAC pursuant to N.C.G.S. § 57D-6-02. (ECF No. 3, at pp. 5–10.)

2. On 26 July 2019, this action was designated a mandatory complex business case and was assigned to the Honorable Gregory P. McGuire. (ECF Nos. 1, 2.)

3. After suit was filed, Burnette initially sought—pursuant to JBAC's Operating Agreement and the North Carolina Limited Liability Company Act ("LLC Act")—reimbursement for fees he had paid in connection with JBAC's defense of this lawsuit and advancement of funds for his own defense. (ECF No. 65, at p. 6.) However, Clark refused to consent to the use of JBAC funds for the provision of a defense to either JBAC or Burnette in this lawsuit. (ECF No. 65, at p. 6.)

4. On 11 March 2020, Burnette and JBAC filed an Amended Answer and Counterclaim. In the counterclaim, Burnette sought to establish his right to "reimbursement and indemnification from JBAC for any payment made and any judgment, settlement, penalty, fine, or other cost, including attorneys' fees, incurred in the course of this litigation." (ECF No. 29, at pp. 11–12.)

5. Burnette and JBAC filed a Motion for Summary Judgment on 10 June 2020 with regard to his counterclaim. (ECF No. 38.) On 2 December 2020, Judge McGuire entered an order and opinion (the "Summary Judgment Order") granting the motion, concluding that "[u]nder the Operating Agreement, Burnette [was]

entitled to indemnification to the extent required under and permitted by N.C.G.S. § 57D-3-31(a)."  (ECF No. 65, at p. 20.)

6.     Specifically, Judge McGuire concluded as follows:

> There is no dispute that Burnette, as a manager of JBAC, would be entitled to indemnification under the Operating Agreement to the extent required under and permitted by N.C.G.S. § 57D-3-31 if he is wholly successful on the merits or otherwise in his defense of the claims against him in this lawsuit.  Therefore, the Court concludes that to the extent it seeks a declaration that the Operating Agreement entitles Burnette to indemnification to the extent required under and permitted by N.C.G.S. § 57D-3-31(a), the Motion for Summary Judgment should be GRANTED.

> Finally, the Motion for Summary Judgment does not raise, and the Court makes no determination in this Order and Opinion regarding the proper procedure for, submitting requests for payment of advancements or reimbursement, the type of legal expenses or the particular work performed by counsel for which Burnette should be advanced or reimbursed, or the specific amounts to be paid for advances or reimbursements.

(ECF No. 65, at p. 19.)

7.     Judge McGuire further directed the parties to

> confer and in good faith attempt to agree on: (a) the amount of advanceable expenses incurred by Burnette to date and on a procedure for payment of future advancement requests, and (b) the amount of reimbursable expenses incurred to date by Burnette on behalf of JBAC and on a procedure for payment of future reimbursement requests. On or before December 30, 2020, the parties shall report to the Court, via email to the clerk assigned to this matter, regarding their attempts to reach agreement and any outstanding disputes.

(ECF No. 65, at pp. 20–21.)

8. After both parties subsequently moved for summary judgment on Clark's claims, the Court issued an order and opinion on 29 April 2021. (ECF No. 75.) Judge McGuire denied Clark's motion for summary judgment on his judicial dissolution claim and granted summary judgment in Burnette's favor on Clark's claims for breaches of the Operating Agreement and unjust enrichment. (ECF No. 75, at pp. 36–37.) The Court also entered summary judgment in Burnette's favor on numerous aspects of Clark's declaratory judgment claims. (ECF No. 75, at pp. 34–36.)

9. This case was re-assigned to the undersigned on 1 July 2021. (ECF No. 80.)

10. On 14 July 2021, Clark filed a voluntary dismissal without prejudice pursuant to N.C. R. Civ. P. 41(a)(1) on all of his remaining claims. (ECF No. 82.)

11. Burnette filed the present motion on 10 January 2022 seeking a final judgment from the Court setting out the precise sums to which Burnette is entitled to indemnification. (ECF No. 92.)

12. The motion came before the Court for a hearing on 8 March 2022 and is now ripe for decision.

## ANALYSIS

13. The LLC Act provides in pertinent part as follows:

> (a) An LLC shall indemnify a person who is wholly successful on the merits or otherwise in the defense of any proceeding to which the person was a party because the person is or was a member, a manager, or other company official if the person also is or was an interest owner at the time to which the claim relates, acting within the person's

scope of authority as a manager, member, or other company official against expenses incurred by the person in connection with the proceeding.

(b) An LLC shall reimburse a person who is or was a member for any payment made and indemnify the person for any obligation, including any judgment, settlement, penalty, fine, or other cost, incurred or borne in the authorized conduct of the LLC's business or preservation of the LLC's business or property, whether acting in the capacity of a manager, member, or other company official if, in making the payment or incurring the obligation, the person complied with the duties and standards of conduct (i) under G.S. 57D-3-21, as modified or eliminated by the operating agreement or (ii) otherwise imposed by this Chapter or other applicable law.

N.C.G.S. § 57D-3-31 (2021).

14. JBAC's Operating Agreement, in turn, states in relevant part as follows:

To the fullest extent required under and permitted by the [LLC] Act, the Company shall indemnify its Managers and make advances for expenses to Managers with respect to the matters capable of indemnification under the [LLC] Act.

(ECF No. 29.1, at p. 7.)

15. "[I]ndemnification is the right to be reimbursed for all out of pocket expenses and losses caused by an underlying claim." *Wheeler v. Wheeler*, 2018 NCBC LEXIS 156, at \*\*26–27 (N.C. Super Ct. Nov. 15, 2018) (quoting *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 586 (Del. Ch. 2006)). The availability of indemnification allows an entity to "allocate the risk of personal liability of directors, officers, employees, and agents." *Id.* at \*\*20 (cleaned up).

16. In his motion, Burnette argues that he is entitled to a final judgment in the total amount of $320,866.64 for expenses and fees that he incurred defending

himself and JBAC from Clark's claims in this action. (ECF No. 92, at p. 2.) Burnette seeks recovery of $314,967.08 from JBAC on a theory of indemnification for fees incurred in the defense of this lawsuit and an award of $5,899.56 from Clark individually for costs pursuant to N.C.G.S. § 7A-305(d). (ECF No. 92, at p. 2.)

17. With regard to the fees and expenses incurred by Burnette for which he seeks indemnification, the amount of $6,025.53 was paid to the Pendergrass Law Firm for work completed *before* the filing of this lawsuit. (ECF No. 93, at p. 6.) The Pendergrass Law Firm billed Burnette for an additional $4,041.50 in fees *after* the filing of this action. (ECF No. 93, at p. 6.) The Williams Mullen law firm then began representing Burnette and billed him for $287,459.00 in attorneys' fees and $8,052.31 in costs in the defense of this suit.[1] (ECF No. 93, at p. 6.) Burnette further seeks indemnification in the amount of $12,653.80 for fees incurred by an individual named Kristen Creech "for litigation support for this lawsuit." (ECF No. 93, at p. 6.) Burnette also argues that he is entitled to $30,155.51 in pre-judgment interest due to JBAC's initial failure to advance amounts Burnette was forced to pay himself.[2] Finally, Burnette contends that he is entitled to an award of post-judgment interest.[3]

---

[1] Burnette also incurred $102,698.50 from Williams Mullen in attorneys' fees relating to the defense of JBAC in this action. (ECF No. 93, at p. 6.)

[2] However, it is undisputed that JBAC did eventually advance Burnette $110,000 for these incurred expenses. (ECF No. 93, at p. 2.)

[3] At the hearing on Burnette's motion, the Court granted the request of Burnette's counsel for leave to submit an affidavit identifying the additional legal fees that have been incurred by Burnette's counsel in litigating the present motion. On 10 March 2022, Burnette's counsel submitted an affidavit stating that between the date the present motion was filed through 9 March 2022 an additional $18,577.56 in fees have accrued. (ECF No. 102.) Clark has not challenged any aspect of this affidavit.

18.   Clark does not dispute that Burnette was successful in defending the claims against him in this action.  He does, however, make several specific arguments in response to Burnette's motion, each of which is discussed below.

## A. Authority of Court to Enter Final Judgment

19.   As an initial matter, Clark argues that the entry of a final judgment at this time would be improper due to the "uncertain" resolution of all the claims in this action.  As a basis for this argument, Clark contends that because the voluntary dismissal of his remaining claims was taken without prejudice pursuant to Rule 41, he has the right to refile those claims within one year.  For this reason, he contends, the entry of a final judgment in this case prior to the expiration of the one-year period would be improper.

20.   This argument, however, rests upon an incorrect interpretation of Rule 41.  It is true that pursuant to Rule 41(a)(1) Clark has the right to refile any of his claims as to which he took a voluntary dismissal within twelve months of the date of the dismissal.  *See* N.C. R. Civ. P. 41(a)(1) ("If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal . . . .").  However, his ability to refile those claims does not preclude the Court from entering a final judgment at the present time as there are *currently* no claims remaining for resolution in this case.  Clark has failed to offer any

legal authority for the proposition that no final judgment may be entered until the one-year period for refiling has expired.[4]

21.     Therefore, the Court concludes that the entry of a final judgment at the present time is appropriate.

## B. Absence of Express Claim for Indemnification in Burnette's Counterclaims

22.     In his next argument, Clark contends that it would be inappropriate for the Court to order that Burnette be indemnified in a particular amount because Burnette's counterclaim did not specifically contain a claim for indemnification. In support of this contention, Clark asserts that the counterclaim, as pled, merely sought a declaration establishing as a general proposition Burnette's right to indemnification under the Operating Agreement and the LLC Act but stopped short of actually seeking indemnification. The Court disagrees.

23.     Judge McGuire's Summary Judgment Order demonstrated the Court's recognition of the fact that this lawsuit would resolve not only Burnette's general entitlement to indemnification but also the specific amounts for which Burnette was to be indemnified. Indeed, as noted above, Judge McGuire directed the parties to confer and attempt to reach an agreement on the appropriate indemnification amounts and on a procedure for payment of those sums to Burnette. (ECF No. 65, at pp. 20–21.) In response to the Court's directive, the parties spent several months

---

[4] The Court's entry of a final judgment at the present time will not disturb Clark's ability to refile the previously dismissed claims in a new lawsuit as provided for under Rule 41 within the applicable one-year deadline.

conferring on this subject but were ultimately unable to reach an agreement. Their failure to do so necessitates a ruling by the Court on these issues.

24. Clark's argument is also inimical to basic notions of judicial economy. If the Court were to adopt Clark's position, Burnette would be required to file a new lawsuit in order to actually obtain indemnification. Such a requirement would make little sense. Moreover, the parties have each had a full and fair opportunity to brief these issues and present arguments to the Court.

25. For these reasons, the Court rejects Clark's argument on this issue.

## C. Discrepancies in Amounts Sought

26. Next, Clark argues that the maximum amount of indemnification that could be awarded to Burnette is $236,998.50 because of an agreement among counsel prior to the filing of this motion. In making this argument, Clark relies upon a series of emails between his attorney and Burnette's attorney during the period in which counsel were attempting to reach an agreement on the amounts of reimbursement owed pursuant to Judge McGuire's directive. Clark asserts that the exchange of emails shows that counsel for both parties agreed that reimbursement to Burnette in the amount of $236,998.50 was appropriate. In light of this agreement, Clark asserts, Burnette is precluded from seeking the greater amount of $320,866.64 in the present motion.

27. To the extent Clark is arguing that these emails created a binding contract between the parties, the Court is unpersuaded. In an email from Burnette's counsel dated 24 August 2021 following the exchange of emails upon which Clark

relies, Burnette's counsel wrote that he would "confer with [Burnette] to confirm his agreement with these amounts[.]" (ECF No. 96.1, at p. 1.) The clear implication of this statement is that Burnette had not yet assented to the indemnification amount discussed between counsel in the prior emails. Therefore, no binding agreement was formed. *See Howard v. IOMAXIS, LLC*, 2020 NCBC LEXIS 57, at \*20 (N.C. Super. Ct. May 1, 2020) (cleaned up) (declining to give effect to a Memorandum of Settlement that manifested "an intent not to become bound until the execution of a more formal agreement.").

## D. Satisfaction of Judgment

28. Clark next requests that any final judgment entered by the Court include a specific mechanism for how the judgment is to be satisfied in light of the illiquidity of JBAC's assets. He speculates as to various problems that might exist for JBAC if any judgment entered by the Court fails to include such a provision. Specifically, Clark requests that the Court "direct as part of its judgment, pursuant to N.C. Gen. Stat. § 1-362, that property in the hands of JBAC, as a judgment debtor, is to be sold under execution." (ECF No. 97, at p. 12.)

29. However, Clark provides no legal authority that would permit the Court to dictate the manner in which execution on its judgment will occur. The only statute that Clark cites in his brief on this issue—N.C.G.S. § 1-362—is contained in a section of our General Statutes entitled "Supplemental Proceedings" and has no applicability *prior* to the entry of a judgment.

30.     Therefore, because this Court lacks the authority to dictate the manner in which the judgment it enters will be satisfied, Clark's request must be denied.

**E. Specific Reimbursable Amounts**

31.     In his remaining arguments, Clark challenges certain categories of fees and expenses sought by Burnette as to which he contends indemnification is not proper.  The Court will address each of these arguments in turn.

**1.  Pre-Litigation Fees**

32.     Clark argues that the LLC Act does not permit indemnification of legal fees incurred prior to the filing of litigation and that, for this reason, the $6,025.53 in fees paid by Burnette to the Pendergrass Law Firm for work completed *before* this lawsuit was filed cannot be recovered on a theory of indemnification.[5]  In response, Burnette contends that the LLC Act's language permitting indemnification for fees incurred "in connection with the proceeding" shows the General Assembly's intent to include pre-suit fees within the scope of indemnifiable expenses.

33.     A resolution of this issue requires the Court to engage in statutory construction.  In analyzing the parties' arguments on this issue, the Court deems the existence of material differences in the wording of the relevant portions of the LLC Act and the North Carolina Business Corporation Act ("NCBCA") to be significant.

34.     The LLC Act authorizes indemnification of expenses incurred "in connection with the proceeding."  N.C.G.S. § 57D-3-31 (2021).  The Act, in turn, defines a "proceeding" as "[a]ny civil or criminal proceeding or other action pending

---

[5] Clark does not contest Burnette's right to reimbursement of the $4,041.50 in fees billed by the Pendergrass Law Firm *after* this lawsuit was filed.

before any court of law or other governmental body or agency or any arbitration proceeding." *Id.* § 57D-1-03.

35. By way of comparison, the NCBCA likewise provides for indemnification as to reasonable expenses incurred "in connection with the proceeding." *Id.* § 55-8-52. However, the NCBCA defines "proceeding" as it relates to indemnification as "any *threatened*, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal." *Id.* § 55-8-50 (emphasis added).

36. Clark argues the fact that the definition of "proceeding" in the LLC Act does not expressly encompass "threatened" actions demonstrates that the General Assembly did not intend to include pre-litigation fees as indemnifiable expenses under the Act. Burnette, conversely, contends that any difference in the wording of these two definitions is immaterial because the term "in connection with the proceeding" included in both the LLC Act and the NCBCA is broad enough to encompass both pending *and* threatened litigation.

37. Issues of statutory interpretation present "a question of law." *McLeod v. Nationwide Mut. Ins. Co.*, 115 N.C. App. 283, 288 (1994), *disc. review denied,* 337 N.C. 694 (1994) (cleaned up). "The cardinal principle of statutory interpretation is to ensure that legislative intent is accomplished." *Id.* In seeking to ascertain the intent of the legislature, the Court is mindful of the presumption that the General Assembly "acted with full knowledge of prior and existing law." *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 695 (1977) (cleaned up).

38.     Although it is not clear why the General Assembly would have wanted to establish different rules for indemnification-related issues depending on whether they arose in the context of limited liability companies or corporations, the Court is not free to ignore the above-referenced differences in the two respective definitions of the word "proceeding."  In reviewing these two statutes *in pari materia*, the General Assembly has recognized a distinction between actual lawsuits and merely threatened lawsuits and only permitted indemnification as to the latter in the context of corporations.  Because the $6,025.53 in fees paid by Burnette to the Pendergrass Law Firm was incurred before the dispute between Clark and Burnette ripened into a lawsuit, the Court is unable to conclude that these fees are properly subject to indemnification.[6]

39.     Therefore, because the LLC Act does not provide for indemnification as to pre-litigation expenses, the Court concludes that the $6,025.53 in fees billed by the Pendergrass Law Firm before the filing of this lawsuit is not indemnifiable.

## 2.  Expenses for Work Performed by Creech

40.     In his next contention, Clark contends that the $12,653.80 amount reflecting work performed by Kristin Creech—a non-lawyer acquaintance of Burnette's who he engaged to perform administrative services related to his defense of this lawsuit—is not permitted as an indemnifiable expense under the LLC Act. Burnette argues in response that Creech's expenses were incurred specifically in

---

[6] Indeed, the Court notes that Judge McGuire's Summary Judgment Order stated that Burnette was entitled to indemnification "in his defense of the claims against him *in this lawsuit*." (ECF No. 65, at p. 19 (emphasis added).)

connection with the litigation, which is the sole requirement for indemnification under the LLC Act.

41. Section 5.05 of JBAC's Operating Agreement provides for indemnification of managers "[t]o the fullest extent required under and permitted by the Act[.]" (ECF No. 40.2, at p. 7.) As quoted above, the LLC Act permits indemnification for expenses incurred "in connection with the proceeding." N.C.G.S. § 57D-3-31 (2021).

42. Burnette testified that Creech billed him for "tasks that were directly related to the lawsuit, including review of documents for production, retrieval of data, and other similar services" and that her bills contained "detailed time entries." (ECF No. 94.3, at pp. 1–2.) Finally, he testified that Creech was paid by check for expenses related to the litigation and that to the extent that she performed other tasks for Burnette not related to this litigation, she was paid separately. (ECF No. 57.1, at pp. 8–10.)

43. Although Clark asserts that these tasks could have been performed by a paralegal for the law firm Burnette retained to defend him and JBAC in the lawsuit, Clark has failed to point to either (1) any evidence rebutting the proposition that the services at issue were reasonably related to the defense of the lawsuit; or (2) any legal authority barring Burnette's right to indemnification for expenses relating to tasks performed by an independent contractor that bear an appropriate nexus to the litigation. Thus, the Court concludes that the $12,653.80 in expenses billed by Creech is recoverable.

**F. Award of Costs**

44. As noted above, $5,899.56 of the total amount sought by Burnette is being sought directly from Clark as awardable costs pursuant to N.C.G.S. § 7A-305(d). Clark has not challenged the recoverability of any of the costs sought by Burnette in his motion.

45. Therefore, the Court concludes that these costs are properly awarded and shall be included in the final judgment.

## CONCLUSION

For the reasons stated above, Burnette's Motion is GRANTED *except* as to its request for indemnification of $6,025.53 in pre-suit fees paid by Burnette to the Pendergrass Law Firm. Burnette shall file with the Court within twenty (20) days a proposed final judgment with each amount separately listed with specificity (including the computation of all applicable pre- and post-judgment interest). This proposed final judgment shall be consistent in all respects with the Court's rulings contained herein.

SO ORDERED, this the 18th day of April, 2022.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases