Patrice COTTON, Appellant–Plaintiff,

v.

AUTO–OWNERS INSURANCE
COMPANY, Appellee–
Defendant.

No. 49A02–1005–CT–575.

Court of Appeals of Indiana.

Nov. 18, 2010.

John F. Townsend, III, Townsend &
Townsend, Indianapolis, IN, Attorney for
Appellant.

Danford R. Due, Scott E. Andres, Due
Doyle Fanning, LLP, Indianapolis, IN, At-
torneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Patrice Cotton appeals the trial court's
order granting partial summary judgment

in favor of Auto–Owners Insurance Company ("Auto–Owners") on Cotton's complaint seeking coverage under a garage policy issued by Auto–Owners to Jim Bailey Auto Sales ("Dealer") for injuries sustained in an automobile accident. Cotton presents the following issues:

1. Whether the trial court erred when it determined that the Dealer's garage policy provides no coverage for Cotton's injuries.

2. Whether the trial court abused its discretion when it denied Cotton's motion to strike an affidavit in support of Auto–Owners' motion for partial summary judgment.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 7, 2004, Cotton was a passenger in a 1991 Oldsmobile driven by James Sneed. In a single car accident, Sneed veered off Madison Avenue in Indianapolis and hit a bridge embankment. Cotton sustained injuries in the accident. Sneed had recently purchased the vehicle from Ricky Ray Bowling, and the vehicle was not yet registered in Sneed's name.

At the time of the accident, the vehicle had a temporary license plate that Sneed's grandfather, James D. Bailey, had given him on October 6, the day before the accident. Sneed was not an employee or otherwise affiliated with the Dealer. The Dealer was covered by a garage policy issued by Auto–Owners.

On September 5, 2006, Cotton filed a complaint against Sneed, Auto–Owners, the Dealer, and Bailey. In the complaint Cotton alleged in part that the Dealer's garage policy provides coverage for her injuries because the Dealer had supplied the temporary license plate that was on

the car at the time of the accident. In the course of discovery, Cotton sought in October 2007 to take Bailey's deposition but was informed in April 2008 that Bailey was in "failing health [.]" Appellant's Ap. at 219. On May 1, 2008, Cotton was informed that Bailey had died.

On September 18, Cotton filed a motion for partial summary judgment against Auto–Owners. On January 19, 2010, Auto–Owners filed its opposition to Cotton's motion, cross-motion for partial summary judgment, brief in support of the cross-motion, and designation of evidence. On March 23, Cotton filed her brief in response to Auto–Owners' cross-motion and motion to strike the affidavit of James D. Bailey. Auto–Owners subsequently filed its response to the motion to strike.

On April 19, the court held a hearing on the cross-motions for partial summary judgment and the motion to strike.[1] On April 29, the court denied Cotton's motion to strike, denied her motion for partial summary judgment, and granted Auto–Owners' motion for partial summary judgment. The order was entered as a final judgment. Cotton now appeals.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing a trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court. No deference is given to the trial court's judgment. *Hutchens v. MP Realty Group–Sheffield Square Apartments*, 654 N.E.2d 35, 37 (Ind.Ct.App.1995), *trans. denied.* Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C).

1. The court did not make a record of the summary judgment proceedings.

Though summary judgment is clothed with a presumption of validity, "[t]he trial court's determination will be 'carefully scrutinized on appeal' to assure that the non-prevailing party is not improperly prevented from having his day in court." *Ind. Dep't of State Revenue v. Caylor–Nickel Clinic, P.C.,* 587 N.E.2d 1311, 1313 (Ind. 1992). If the trial court's grant of summary judgment can be sustained on any theory or basis in the record, we will affirm. *Lewis–Levett v. Day,* 875 N.E.2d 293, 295 (Ind.Ct.App.2007), *trans. denied.*

### Issue One: Garage Policy Coverage

Cotton contends that the trial court erred when it determined that the Dealer's garage policy did not provide coverage for the injuries she sustained in the accident. Contracts of insurance are governed by the same rules of construction as other contracts. *Schilling v. Huntington County Cmty. Sch. Corp.,* 898 N.E.2d 385, 388 (Ind.Ct.App.2008), *trans. denied.* The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the contract. *Id.* To that end, "[w]e construe the insurance policy as a whole and consider all of the provisions of the contract[,] not just individual words, phrases, or paragraphs." *Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.2004), *trans. denied.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Schilling,* 898 N.E.2d at 388. However, when an insurance contract is clear and unambiguous, the language must be given its plain meaning. *Id.*

At the time of the accident, the Dealer was covered by a garage policy issued by Auto–Owners. The garage policy provides, in relevant part:

The insurance under this division covers the ownership, maintenance, occupation or use of the premises for the purposes of an *automobile dealer, repair shop, service station, storage garage, or public parking place, and all operations which are* necessary or *incidental thereto, including* (1) *the* ownership, maintenance or *use of any automobile in connection with the foregoing[.]*

\* \* \*

The insurance under this division covers the ownership, maintenance, occupation or use of the premises for the purposes of an automobile repair shop, service station, storage garage or public parking place and all operations which are necessary for incidental thereto, including the use for any propose *in connection with* the foregoing of any automobile not hired, registered or owned in whole or in part by the named insured, any partner or officer thereof.

Appellant's App. at 186 (emphases added).

As Cotton notes, only once have we considered similar language in a garage policy. In *Automobile Underwriters, Inc. v. Hitch,* 169 Ind.App. 453, 349 N.E.2d 271 (1976), Hitch, a service station owner and operator, purchased a garage policy to cover his business. The policy covered injury or property damage "caused by an occurrence and arising out of garage operations. . . ." *Id.* at 274. The policy defined "garage operations" to mean "the ownership, maintenance or use of the premises for the purpose of a garage and all operations necessary or incidental thereto." *Id.*

Hitch also sold reloaded shotgun shells out of the garage storefront. When someone using Hitch's reloaded shells was allegedly injured by them, Hitch filed a claim with his garage policy. This court held that the "sale of reloaded shotgun shells was not necessary or incidental to the maintenance or use of the premises for the purpose of a garage." *Id.* at 275. In support, we cited 8 Blashfield, Automobile

Law and Practice, § 319.3, p. 102 (1966): "Where such policy insures against liability by reason of the maintenance, conduct, and operations of the garage, it is only matters arising on garage premises or *directly incidental to the garage business* for which the insurance company must answer." (Emphasis added). As a result, we found that the policy language was not ambiguous and that "the only reasonable interpretation of the garage liability policy ... is that the sale of shotgun shells is not necessary or incidental to the use of the premises for the purpose of operating a garage." *Id.*

Cotton contends that *Hitch* is distinguishable because "the ability to obtain and distribute interim plates is dependent upon [the Dealer's] status as a licensed dealer and, therefore, 'incidental' to the business.[1]" Appellant's Brief at 8. As a result, she contends that the garage policy provides coverage for her injuries because the vehicle in which she was injured had a temporary license plate provided by the Dealer. But the plain language of the policy does not provide coverage for the act of giving a driver a temporary license plate. Instead, the policy, as relevant here, provides coverage for "all operations which are necessary or incidental" to use of the Dealer's premises as an automobile dealer, including "use of an automobile in connection with" the automobile dealer, repair shop, service station, storage area, or public parking place. *Id.*

While we rely on *Hitch* for its Indiana precedential value, the North Carolina Court of Appeals considered remarkably similar facts in *McLeod v. Nationwide Mutual Insurance Co.,* 115 N.C.App. 283, 444 S.E.2d 487 (1994), an opinion that is not binding on this court but is persuasive. In *McLeod,* the dealer had permitted an employee to use dealership license tags on his personal vehicle, and the employee had

in turn permitted another person to operate his vehicle while the dealership tags were attached. As in the instant case, the dealer neither owned, maintained, nor used the automobile in which the plaintiff was injured. The dispositive issue was whether under the garage liability policy the permissive use of the tags was either "necessary or incidental to a garage business." *Id.* at 292, 444 S.E.2d 487. The court concluded that such use was not necessary and could conceive "of no incidental business purpose." *Id.* Thus, the court held that the plaintiff's injuries did not result from "garage operations" as defined under the policy and directed the entry of summary judgment for the dealer. *Id.* at 293, 444 S.E.2d 487.

Cotton also cites a Webster dictionary definition taken from a South Carolina garage liability case to the effect that "incidental" means "subordinate, nonessential, occurring merely by chance or without intention or calculation." *See Lumbermens Mut. Cas. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.,* 70 N.C.App. 742, 321 S.E.2d 10, 12 (1984). Indeed, the use of such a broad definition would require virtually no nexus between the insured's business and the act or occurrence at issue. But the Auto–Owners policy here does not insure gratuitous conduct unrelated to garage operations. The policy insures only those necessary or incidental operations "in connection with" the business.

Cotton does not argue, and the facts do not show, that the Oldsmobile was ever owned by the Dealer or Bailey or that Sneed was operating the vehicle "in connection with" the Dealer's garage operations. The mere fact that the Dealer provided a temporary license plate for a vehicle does not bring that vehicle within the coverage of the garage policy. Generally speaking, to provide a temporary li-

cense plate may well be incidental to a licensed auto dealer's business, but Auto-Owners' garage policy provides coverage only if the plate is used "in connection with" the business operations. In other words, the use of the plate must be "directly incidental to the garage business." *See Hitch,* 349 N.E.2d at 274 (quoting Blashfield, Automobile Law and Practice, § 319.3, p. 102).

In sum, for an "incidental" act or occurrence to be insured, it must bear a direct relationship to coverage under the garage liability policy. Cotton has not shown such a relationship here. As such, Cotton has not shown that the trial court clearly erred when it concluded that the garage policy does not cover the vehicle in question or the injuries she sustained in Sneed's single car accident.[2]

### Issue Two: Motion to Strike

■ Cotton also contends that the trial court abused its discretion when it denied her motion to strike the Affidavit of James D. Bailey ("Bailey Affidavit"). Cotton maintains that the Bailey Affidavit is not admissible at trial because it is hearsay and Cotton did not have an opportunity to "develop [Bailey's] testimony by 'direct, cross or redirect examination' as required by I.R.E. 804(b)(1)." Appellant's App. at 220.

■ "[A]n affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would be admissible in another form at trial."

*Reeder v. Harper,* 788 N.E.2d 1236, 1241–42 (Ind.2003).

■ [I]t is the substance of the affidavit and not the form that controls:

The evidence need not be in admissible *form;* affidavits are ordinarily not admissible evidence at a trial. But it must be admissible content.... Occasional statements in cases that the party opposing summary judgment must present admissible evidence should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

*Id.* at 1240–41 (emphases and omissions in original) (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir.1994)).

Here, Cotton maintains that "there is no other source of evidence which would make Bailey's testimony admissible." Appellant's Brief at 19. But she misconstrues the rule in *Reeder* to apply only to expert witnesses. While the facts in *Reeder* involved a question about the admission of an expert witness' affidavit, the reasoning behind the rule and the language used to set it out do not limit its application to expert witnesses.

Applying the rule in *Reeder,* Cotton nevertheless argues that the Bailey Affidavit should not have been admitted. Specifically, she argues that "[t]here is no other source of evidence which would make Bailey's [affidavit] testimony admissible." *Id.* The Bailey Affidavit states, in part, as follows:

---

2. Cotton cites several cases from other jurisdictions in support of her contention that Bailey's act of providing a temporary license plate to Sneed was incidental to the Dealer's business operations. But the cases cited by Cotton are distinguishable in that all find insurer coverage based on the use of a license plate provided by the dealer as well as the dealer's involvement in the purchase, sale, or loan of an automobile. *See Allstate Ins. Co. v. Urban,* 15 Ill.App.2d 386, 146 N.E.2d 387 (1957); *Hartford Ins. Group v. Rubinshteyn,* 66 N.Y.2d 732, 497 N.Y.S.2d 352, 488 N.E.2d 98 (1985); *Switzer v. Merchants Mut. Cas. Co.,* 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904 (1957); *Maryland Cas. Co. v. Heald,* 125 Vt. 116, 211 A.2d 177 (1965).

2. At all time relevant to this matter, I have owned and operated [the Dealer]. James Sneed is my grandson.

3. At all relevant times to this matter, James Sneed has never been an employee or agent of mine or of [the Dealer]. He has never bought or sold any vehicles for or on behalf of me or [the Dealer]. He has never been authorized to drive or transport any vehicles on behalf of me or [the Dealer]. He has never been allowed to drive or given permission to drive vehicles owned or maintained by me or [the Dealer].

4. At all relevant times to this matter, James Sneed's early 1990's Oldsmobile was not ever purchased, owned, or possessed by me or [the Dealer]. Neither I or [the Dealer] ever attempted to sell, transfer, provide, give permission to drive or operate or otherwise authorize the possession or use of the Oldsmobile, either to James Sneed, or to anyone else.

5. At all time relevant to this matter, the Oldsmobile was never listed or offered for sale through me or [the Dealer], and was never placed or displayed for sale in public or on any property or premises of [the Dealer].

Appellant's App. at 214.

Again, Cotton has not described what statements in the Bailey Affidavit are inadmissible under *Reeder* because the same evidence would not be admissible at trial from another source. To the extent the statements in the affidavit regard the operations of the Dealer, including its inventory, sales, and employees, the Dealer's business records or the testimony of a Dealer employee would be admissible proof of such matters. Thus, the trial court did not abuse its discretion when it refused to strike those portions of the Bailey Affidavit. Cotton also argues that the Bailey Affidavit was used to establish facts based on Bailey's "personal knowledge which cannot be substantively reproduced because no other witness has the same personal knowledge foundation." Appellant's Brief at 20. To the extent Cotton's argument refers to Bailey's conversation with Sneed about the temporary license plate, Sneed could testify on that matter. Thus, that evidence is also admissible at trial from another source. Cotton has not shown that the trial court abused its discretion when it denied her motion to strike the Bailey Affidavit.

Affirmed.

BAKER, C.J., and MATHIAS, J., concur.