**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**JAMES E. AYERS**
Wernle, Ristine & Ayers
Crawfordville, Indiana

ATTORNEY FOR APPELLEES:

**BRUCE B. PAUL**
Stites & Harbison, PLLC
Jeffersonville, Indiana

**FILED**

Dec 11 2013, 9:52 am

**CLERK**
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

JOHN KADER,                                    )
                                               )
    Appellant,                         )
                                               )
        vs.                )    No.  33A01-1302-CT-72
                                               )
STATE OF INDIANA, DEPARTMENT OF                )
CORRECTION, AND THE GEO GROUP, INC.,           )
                                               )
    Appellees.                         )

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Kit C. Dean Crane, Judge
Cause No. 33C02-0909-CT-19

**December 11, 2013**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

In a textbook example of the differences between the Indiana and federal summary judgment standards, John Kader ("Kader"), an inmate with the Indiana Department of Correction ("the Department"), appeals the trial court's entry of summary judgment against him in his negligence suit against The GEO Group, Inc. ("GEO"), the State of Indiana ("the State"), the Department (collectively, "the Defendants").

We affirm in part, reverse in part, and remand for further proceedings.

**Issues**

Kader raises two issues for our review, which we restate as:

I. Whether the trial court abused its discretion when it struck an affidavit Kader submitted in opposition to GEO's motion for summary judgment; and

II. Whether the trial court erred when it entered summary judgment against Kader when it concluded that:

   A. GEO's duty of care to Kader was that of a landowner to an invitee, and to the extent GEO had not been notified of any defects with the floor grates, its duty toward Kader did not include remedying any such defects;

   B. Kader was contributorily negligent because he did not use a wheelchair and was walking without assistance of a cane;

   C. Kader failed to produce competent evidence that falling on the floor grates was the medical cause of the injuries of which he complains; and

   D. GEO had no duty of care as to Kader's medical treatment.

**Facts and Procedural History**

During September 2007, Kader was an inmate at the New Castle Correctional Facility ("the facility"). The facility was one of several Indiana correctional institutions owned by the

State and controlled by the Department. GEO, a private corporation specializing in the operation and management of prisons, operated the facility under a contract with the Department.

Prior to and throughout September 2007, Kader suffered from what he described as "drop foot" in his right leg, which caused him difficulty in lifting his right foot off the ground while walking. At some point before September 2007, Kader had also suffered a head injury.

On September 29, 2007, Kader fell while walking through the facility and struck his head. Kader attributed his fall to one of his feet catching on an uneven floor grate. Kader was transported to Henry County Hospital for treatment; from there, he was subsequently transported to Wishard Hospital in Indianapolis for treatment of symptoms related to a head injury. Physicians at Wishard Hospital recommended additional diagnostic and follow-up treatment for Kader's head injury; neither GEO nor the Department took action on this recommendation.

On September 29, 2009, Kader filed suit against the State, the Department, and GEO, alleging negligent supervision, negligent installation of the floor grates, and negligence in providing medical care after Kader's return to the facility from Wishard Hospital.

On June 18, 2012, after depositions had been conducted of Kader and Virgil Ballenger ("Ballenger"), a former correctional officer employed by GEO at the facility, the Defendants jointly filed a motion for summary judgment against Kader.

On July 23, 2012, Kader submitted his response to the Defendants' motion. In support of his response, Kader designated his deposition, Ballenger's deposition, and the affidavit of

3

LaDarryl Holland ("Holland"), an inmate at the facility who was responsible for cleaning the hallway in which Kader fell. On August 9, 2012, the Defendants moved to strike Holland's affidavit.

On September 4, 2012, the trial court granted the motion to strike Holland's affidavit and entered summary judgment against Kader; the court's order included findings and conclusions setting forth its rationale.

On September 7, 2012, Kader filed a motion captioned as one seeking reconsideration of the entry of summary judgment. In it, Kader noted that when the trial court entered summary judgment, it erroneously disregarded from consideration portions of Kader's timely-filed responsive briefing. The Defendants' responsive briefing acknowledged the error, but nonetheless continued to argue that summary judgment against Kader was proper.

On January 14, 2013, the trial court again entered summary judgment against Kader.[1]

This appeal followed.

**Discussion and Decision**

Holland's Affidavit

In his first designated issue on appeal, Kader contends that the trial court abused its discretion when it struck LaDarryl Holland's affidavit, which Kader had designated as evidentiary material in his opposition to the motion for summary judgment.

A trial court has broad discretion to rule upon evidentiary matters. Kroger Co. v. Plonski, 930 N.E.2d 1, 5 (Ind. 2010). Such discretion "extends to rulings on motions to

---

[1] None of the defendants contend that Kader's motion or this appeal were untimely filed.

strike affidavits on the grounds that they fail to comply with the summary judgment rules." Id. (citations and quotations omitted).

When submitting or defending against a motion for summary judgment, a party shall serve supporting affidavits and other designated evidentiary materials. Ind. Trial Rule 56(C). Such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." T.R. 56(E).

> Mere assertions in an affidavit of conclusions of law or opinions will not suffice. City of Indianapolis v. Duffitt, 929 N.E.2d 231, 239 (Ind. Ct. App. 2010). "An affidavit need not contain an explicit recital of personal knowledge when it can be reasonably inferred from its contents that the material parts thereof are within the affiant's personal knowledge." Decker v. Zengler, 883 N.E.2d 839, 844 (Ind. Ct. App. 2008), trans. denied.

DeLage Landen Fin. Servs., Inc. v. Cmty. Mental Health Ctr., Inc., 965 N.E.2d 693, 701 (Ind. Ct. App. 2012), trans. denied.

"[A]n affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would be admissible in another form at trial." Reeder v. Harper, 788 N.E.2d 1236, 1241-42 (Ind. 2003). The substance of the affidavit controls, not the form. Cotton v. Auto-Owners Ins. Co., 937 N.E.2d 414, 418 (Ind. Ct. App. 2010) (citing Reeder, 788 N.E.2d at 1240-41).

In DeLage, this Court found no abuse of discretion where a trial court denied a defendant's motion to strike an affidavit submitted by a plaintiff in support of the plaintiff's motion for summary judgment in a contract case. DeLage, 965 N.E.2d at 701. In reaching that conclusion, we observed that the plaintiff's affidavit included "a specific recitation that

[affiant had] personal knowledge of the facts related therein," and that other averments demonstrated familiarity with the contract at issue and its underlying accounts. Id. Thus, the defendant could not overcome summary judgment merely by seeking to discredit the averments on appeal. Id.

Here, GEO contended that Holland's affidavit failed to meet the requirements of Trial Rule 56(E). GEO argued that the affidavit was not credible because it included averments that were specifically contradicted by evidence and affidavits from employees of GEO and the Department. GEO further claimed that Holland's averments failed to demonstrate personal knowledge of the facts of the case. The trial court agreed, and struck the affidavit.

After averring competence to testify, Holland's affidavit states:

2.     I was an inmate at [the facility] operated by the GEO Group, Inc. in 2007, and at the time of Mr. Kader's fall, and have personal knowledge regarding some of the facts of this case.

3.     At the time of Mr. Kader's fall … I was the inmate clerk in charge of cleaning the hallway where the floor grate in question was located, and I was personally present when Mr. Kader fell.

4.     The gratings in the hallway were aluminum and had become warped and could not be positioned to be level with one another and caused a tripping hazard. As installed there was not a level surface. Some edges were above floor level, and that created the hazard. Over a period of at least six months before Mr. Kader's injury, this hazard was well known to Staff in writing and by showing and telling. Being the clerk at the time, I personally contacted Caseworker Sloss, Caseworker Kim Lewis, Lt. Lucas, Major Thompson, and Superintendent Ritley. We discussed that it should either be filled in or at least the grating removed. The caseworkers told me they had put in several work-orders for maintenance. The others indicated that the problem would be fixed.

5.     During my stay at [the facility] no steps were taken to correct or repair this problem even after Mr. Kader was injured.

6

6.      On the day Mr. Kader fell I was working as the clerk and Ms. Clark was the officer in charge. Mr. Kader was crossing the grating at a walking pace when he tripped over the protruding edge of the grate and fell head first, striking his head on the corner of the lower windowsill.

7.      Ms. Clark, who was at the outside door, immediately stepped in to examine Mr. Kader, who was bleeding from the head. She remained with him, cleaning the blood away, and comforting him until medical personnel arrived and took him away.

(Appellant's App'x at 94-95.)

In response to Holland's affidavit—and specifically the portions of paragraph four that discuss Holland's efforts to notify prison staff of the danger posed by the floor grates—GEO produced an affidavit indicating that members of the staff to whom Holland's averments referred were either not employed at the prison at the time or were never employed at the prison. In its motion to strike the affidavit, GEO further argued that much of what Holland stated concerning his interactions with prison staff amounted to hearsay that might be inadmissible at trial, and that the rest of the affidavit was inadmissible either because Holland's claims of personal knowledge were insufficient or because they amounted to legal conclusions to which Holland could not properly speak.

The trial court was correct to strike some portions of the affidavit; other portions, however, are not inadmissible and were not properly stricken. Portions of Holland's affidavit relate information of which he would reasonably be expected to have personal knowledge in his position as an inmate clerk present in the hallway when and where Kader fell. See DeLage, 965 N.E.2d at 701. Specifically, Holland's averments concerning the condition of the floor grates—that is, whether they were uneven and protruded upward—and where Kader

7

was when he fell were admissible, and it was error to strike these portions of the affidavit.

So, too, was it error to strike Holland's averment that he had submitted written requests and spoken with prison officials concerning the condition of the floor grates. But see Price v. Freeland, 832 N.E.2d 1036, 1041-42 (Ind. Ct. App. 2005) (holding that the trial court erred when it did not strike from an affidavit statements concerning court filings, where copies of the claimed court filings were not attached in support of the affidavit).

Holland's averment that prison officials had assured him that the condition would be remedied was inadmissible and properly stricken. See Ind. Evidence Rule 801 (defining hearsay). Too, Holland's averment that the grates were a tripping hazard because their edges protruded, leading to Kader "tripp[ing] over the protruding edge of the grate," (Appellant's App'x at 95) is inadmissible because it asserts a personal opinion or legal conclusion that an unremedied tripping hazard existed, and that hazard was the cause of Kader's fall.

To the extent the trial court struck portions of the affidavit that were admissible, it abused its discretion, and we therefore reverse the order to the extent it strikes the admissible portions of the affidavit.

### Summary Judgment

We turn now to Kader's second contention on appeal, namely, that the trial court erred when it granted the Defendants' motion for summary judgment.

A trial court's entry of summary judgment comes to this court "clothed with a presumption of validity." Bunch v. Tiwari, 711 N.E.2d 844, 848 (Ind. Ct. App. 1999) (citations and quotations omitted). Nevertheless, "we carefully assess the trial court's

decision to ensure that the nonmovant was not improperly denied its day in court." Colonial

Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997).

Thus, we review appeals from the entry of summary judgment de novo, and are bound

by the same standard as the trial court. Wilson v. Isaacs, 929 N.E.2d 200, 202-03 (Ind.

2010). Summary judgment "shall be rendered forthwith if the designated evidentiary matter

shows that there is no issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." T.R. 56(C). Any doubt as to the existence of a factual issue

should be resolved against the party moving for summary judgment, and where designated

evidentiary materials may give rise to reasonable conflicting inferences, such inferences shall

be drawn in favor of the non-movant. Auto-Owners Inc. Co. v. Harvey, 842 N.E.2d 1279,

1289 (Ind. 2006). "The court must accept as true those facts alleged by the nonmoving party

and resolve all doubts against the moving party.'" Id. (citations and quotations omitted).

In summary judgment proceedings, the initial burden is on the movant to "designate

sufficient evidence to foreclose the nonmovant's reasonable inferences and eliminate any

genuine factual issues." Butler v. City of Peru, 733 N.E.2d 912, 915 (Ind. 2000). It is only

after the movant has met this burden that "the burden shifts to the nonmovant to make a

showing sufficient to establish the existence of a genuine issue for trial on each challenged

element of the cause of action." Id. This aspect of summary judgment procedure in Indiana

differs significantly from the federal procedure.[2]

---

[2] Federal procedure requires only that the movant "inform the court of the basis of the motion and identify relevant portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" Jarboe v. Landmark Cmty. Newspapers of Ind., Inc., 644 N.E.2d 118, 123 (Ind. 1994) (quoting Celotex Corp.

The summary judgment order in this case was entered upon a claim of negligence. Summary judgment is rarely appropriate in negligence cases. <u>Kennedy v. Guess, Inc.</u>, 806 N.E.2d 776, 783 (Ind. 2004). This is because "[i]ssues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination of a trier of fact." <u>Florio v. Tilley</u>, 875 N.E.2d 253, 256 (Ind. Ct. App. 2007), <u>trans. denied</u>. Questions of law, like whether a defendant had a duty of care as to a plaintiff or whether certain facts constitute proximate cause, may be appropriate for summary judgment. <u>See</u>, <u>e.g.</u>, <u>Plonski</u>, 930 N.E.2d at 9; <u>Florio</u>, 875 N.E.2d at 256. So, too, is the defense of contributory negligence (as applicable to government defendants) "generally a question of fact … not appropriate for summary judgment 'if there are conflicting factual inferences.'" <u>Funston v. Schl. Town of Munster</u>, 849 N.E.2d 595, 599 (Ind. 2006). And while a trial court's annunciation of findings of fact and conclusions of law on such matters may aid our review and reveal the reasoning of the trial court, they are not required and are not binding upon appeal. <u>New Albany Historic Pres. Comm'n v. Bradford Realty, Inc.</u>, 965 N.E.2d 79, 84 (Ind. Ct. App. 2012).

Here, the trial court assessed the credibility of Kader's statements regarding the condition of the floor grates on which he fell, comparing Kader's statements to those of employees or former employees at the facility. The court also found that Kader's walking without a cane or wheelchair amounted to contributory negligence.

---

v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 2553 (1986)). The movant having met this burden, the nonmovant must bear the burden to show the existence of a genuine issue of material fact on each challenged element upon which the nonmovant must bear the burden of proof at trial. <u>Id.</u>

Yet the role of the trial court at summary judgment is not to act as a trier of fact, but rather to determine whether the movant established, prima facie, either that there is insufficient evidence to proceed to trial, or that the movant is otherwise entitled to judgment as a matter of law. Witness credibility and the relative apparent weight of evidence are not relevant considerations at summary judgment. Galligan v. Galligan, 741 N.E.2d 1217, 1227 (Ind. 2001). Assessments of credibility and weight are the province of the fact-finder at trial, not the trial court at summary judgment. See Miller v. Bernard, 957 N.E.2d 685, 699 (Ind. Ct. App. 2011) (noting that "[i]t is properly the role of a fact-finder to determine … intentions and actions"). And as to contributory negligence, the trial court may enter summary judgment on such matters "only when the court can say that no reasonable person would have acted as the plaintiff did under the circumstances," or, only if a plaintiff's (here, Kader's) negligence was "'so clear and palpable that no verdict could make it otherwise.'" Templeton v. City of Hammond, 679 N.E.2d 1368, 1373 (Ind. Ct. App. 1997).

Here, there was contradictory evidence in the form of Kader's and Ballanger's deposition testimony concerning the condition of the floor grates. There was also evidence in the form of Kader's testimony that though he had been provided a wheelchair and a cane, he was regularly able to navigate the prison environment without using those aids and that his need for them was unpredictable. The trial court's assessment of the credibility of the testimony and factual determination that Kader's conduct was contributorily negligent, despite evidence that gave rise to contrary inferences, were both in error.[3]

---

[3] This analysis is only strengthened by inclusion of the admissible portions of Holland's affidavit. See

11

*Nature of GEO's Duty of Care*

We turn next to the question of what duty of care GEO, a private contractor hired by the State to manage a Department prison, owed to Kader, a prisoner. GEO contends, and the trial court agreed, that Kader was simply an invitee.

"A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." Pfenning v. Lineman, 947 N.E.2d 392, 398 (Ind. 2011). "When there is no genuine issue of material fact and any one of these elements is clearly absent, summary judgment is appropriate." Id. at 403.

In assessing GEO's duty of care, the trial court determined that Kader was an invitee and that, because there had been no evidence presented of prior reporting or any other knowledge on the part of GEO regarding problems with the grating upon which Kader fell, GEO could not be liable toward Kader. The court also found that Kader was contributorily negligent for his injuries for failure to use a cane and/or wheelchair with which he had been provided due to his medical conditions.

Our research has not revealed that Indiana courts have applied to cases of inmate injury the trespasser-licensee-invitee distinctions generally applicable in premises liability cases. As our supreme court has previously announced, the duty of a custodian of inmates is "to exercise reasonable care to preserve the life, heath, and safety of the person in custody." Sauders v. Cnty. of Steuben, 693 N.E.2d 16, 18 (Ind. 1998). The duty does not extend to

discussion, supra.

taking action to prevent a particular act. Id. Rather, the custodian's duty "is to take reasonable steps under the circumstances for the life, health, and safety of the detainee." Id. The steps to be taken "will vary according to the facts and circumstances presented in each case." Id. (citations and quotations omitted).

In reaching this conclusion, our supreme court found the Restatement (Second) of Torts persuasive. Id. The Restatement recognizes that this distinction between the duty of a custodian and that of an ordinary landowner "arise[s] out of special relations between the parties, which create a special responsibility, and take the case out of the general rule." Restatement 2d of Torts § 314A cmt. B. The duty to protect the other against unreasonable risk of harm "extends to risks arising out of the actor's own conduct, or the condition of his land or chattels ... [and] to risks arising from pure accident, or from the negligence of the plaintiff himself." Restatement 2d of Torts § 314A cmt. D.

Kader was an inmate in the facility's care—not a social or business guest either invited or permitted onto the property. Thus, the trial court erred when it concluded that GEO owed Kader the duty of care generally reserved for an invitee. Upon remand, we instruct the trial court to apply the duty of care applicable to individuals and entities acting as a custodian, rather than as an ordinary landowner.

### *Contributory Negligence*

We now turn to the trial court's conclusion that Kader's walking through the facility without an aid was contributory negligence that afforded GEO a complete defense to liability.

Indiana has adopted, in most tort cases, a comparative negligence scheme whereby the

13

negligence of a plaintiff, which contributed to the complained-of injury, does not of itself afford a complete defense to liability for a defendant. See Ind. Code § 34-51-2-1 et seq. Rather, the relative levels of fault among the parties are assessed, and a defendant may be found to be partly or entirely liable or not liable for a plaintiff's injuries. I.C. § 34-51-2-6. However, where the plaintiff pursues a claim of negligence against an alleged tortfeasor under the Indiana Tort Claims Act, the comparative negligence scheme set forth by the Indiana Comparative Fault Act does not apply. I.C. § 34-51-2-2. In such cases, contributory negligence on the part of a plaintiff provides a complete defense to liability for the State and other government actors who fall within the scope of the Act. Shand Min., Inc. v. Clay Cnty. Bd. of Comm'rs, 671 N.E.2d 477, 479 (Ind. Ct. App. 1996), trans. denied.

The Indiana Tort Claims Act specifies who is within the scope of the provisions of the Act. The Act applies to suits at tort against governmental entities, political subdivisions, and individual members or employees of government entities under certain circumstances. I.C. §§ 34-13-3-1 & -5. Further, the Act provides that certain private parties working on behalf of a governmental body also fall within the scope of the provisions of the Act. I.C. § 34-13-3-22 (treating as political subdivisions statutorily created or defined community action agencies, individuals or corporations rendering public transportation services under certain circumstances, and members of volunteer fire departments under certain circumstances). Private prison operators like GEO and its employees do not fall within any of these categories.

That GEO falls outside the scope of the Indiana Tort Claims Act and the universe of

14

claims that an individual may bring against the State finds support in several rulings by the United States Supreme Court. In a series of cases, and most recently in <u>Minneci v. Pollard</u>, ___ U.S. ___, 132 S. Ct. 617 (2012), the Court considered lawsuits filed by prisoners alleging federal civil rights violations against private prison operators. In <u>Minneci</u>, the plaintiff was an inmate in a privately-operated, federal prison, and claimed that his Eighth Amendment rights had been violated when the private prison operator and its employees were negligent in their provision of medical care. <u>Id.</u> at 626. The Court held that in such circumstances, no claim under the Civil Rights Act may be pursued where other civil remedies—in <u>Minneci</u>, a negligence action at tort under state common law—are available to the inmate plaintiff. <u>Id.</u>

Taking together the provisions of the Tort Claims Act and the result of <u>Minneci</u> and its predecessor cases, we conclude that such private contractors as prison operators do not merely stand in the shoes of a government body for purposes of liability at tort. Rather, such private contractors are subject to liability in much the same manner as other private actors. GEO, a private business, is thus not entitled to relief from liability under a contributory negligence defense.

Moreover, whether a plaintiff has engaged in any form of negligent conduct that contributed to his injury—under either a comparative or a contributory negligence scheme—is ordinarily a question left to a finder of fact to decide. Here, the trial court concluded that Kader's failure to use a cane or wheelchair was contributory negligence that barred him from any recovery against GEO or the State. The testimony Kader offered during his deposition, portions of which were designated material submitted at summary judgment, indicates that

despite his "drop foot" and a past history of occasional falls, he regularly navigated successfully in his prison environment without a cane or a wheelchair. And that testimony raises an additional question of fact concerning whether GEO, as Kader's custodian, breached its duty of care by not precluding him from moving through the prison without also using a cane or wheelchair.

That is, GEO has not established that there is no question of material fact concerning whether Kader's non-use of an ambulation aid on September 29, 2007, amounted to contributory negligence, or whether GEO in turn breached its duty of care in permitting Kader's unassisted movement through the facility. This is therefore a question of fact for the jury to decide. The trial court erred when it determined otherwise. And upon remand, we instruct the trial court to treat Kader's claims against GEO as within the scope of comparative, not contributory negligence.

### *Causation*

Next, we turn to Kader's contention that the trial court erred when it granted summary judgment on the question of whether his injuries were caused by his fall on September 29, 2007. Kader argues that the trial court improperly shifted onto him the burden of producing evidence that his injuries were caused, or at least aggravated, by his fall.

We agree.

At summary judgment, GEO argued, and the trial court agreed, that a plaintiff must, where the plaintiff suffered some prior medical condition, bear the burden of proving that additional injuries or complications to that prior condition suffered were the result of a

16

tortfeasor's actions. In this, the court relied upon Topp v. Leffers, 838 N.E.2d 1027 (Ind. Ct. App. 2005), trans. denied, and Armstrong v. Gordon, 871 N.E.2d 287 (Ind. Ct. App. 2007), trans. denied. The proposition for which the trial court and the defendants relied upon these cases is generally correct—but it is operative at trial, where the burden of proof rests upon the plaintiff.

Here, Kader as the nonmovant plaintiff bore no burden of production until GEO as the movant defendant came forward with evidence establishing the absence of any issue of material fact as to the cause of Kader's injuries. See Butler, 733 N.E.2d at 915. Thus, both Topp and Armstrong are easily distinguished—they apply to the plaintiff's burden of proof at trial, not the nonmovant plaintiff's burden of production at summary judgment. And our review of the record does not reveal that GEO satisfied its burden of production. GEO designated the testimony or affidavits of Kader and GEO employees on the question of the design, condition, construction, and maintenance of the floor grates; there is no medical evidence from either party in the record.

Having failed to designate any evidentiary matter in support of its motion on the question of causation, GEO failed to carry its burden of production at the summary judgment stage. Where, as here, the movant fails in its burden of production, the burden did not shift onto Kader as the nonmovant. See id. The trial court's assignment of the burden of production to Kader was erroneous, and so was entry of summary judgment on causation.

*Medical Treatment*

Finally, we turn to the question of whether summary judgment was proper on Kader's

17

allegation that GEO was negligent in failing to procure follow-up medical treatment.

Here, GEO produced evidence in the form of contractual arrangements and testimony that questions of medical care were not within the scope of its role in the facility. Instead, the Department entered into an agreement with a contractor other than GEO to provide for inmate medical care. The Department also restricted GEO from providing such care itself. Kader's testimony also indicates that he was aware GEO did not address questions of medical care, and there is no evidence that GEO otherwise assumed a duty for Kader's medical care.

In light of the designated evidentiary materials, we cannot conclude that the trial court erred when it entered summary judgment as to GEO's duty of care for Kader's medical treatment after he was released from Wishard Hospital and returned to the facility. We therefore affirm the trial court's entry of summary judgment as to Kader's claim that GEO was negligent in failing to provide for his follow-up medical care.

We cannot, however, sustain summary judgment in favor of the State and the Department on this basis. For while there is no question of material fact as to GEO's position vis-à-vis medical care for Kader, there has been no evidentiary matter designated concerning any duty or lack thereof on the part of the State and the Department, as custodians of Kader and the ultimate authority over his medical treatment. We therefore reverse the trial court's entry of summary judgment as to these defendants on Kader's negligent medical treatment claim.

## Conclusion

The trial court abused its discretion when it struck the entirety of Holland's affidavit,

18

which Kader designated as evidentiary material in response to the motion for summary judgment. The trial court erred when it entered summary judgment against Kader regarding his claims against GEO, except as to Kader's claim that GEO was negligent in its procurement and supervision of his follow-up medical care. The trial court also erred when it entered summary judgment against Kader on his claim of negligent medical treatment as it pertained to the State and the Department.

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and KIRSCH, J., concur.