## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2019, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Candace A. Bankovich
Neal Bowling
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kyle C. Persinger
Michael T. Hotz
Rebecca M.S. Johnson
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven L. McAtee, <br> *Appellant-Defendant,* <br><br> v. <br><br> Arletty Ivisa Huber, <br> *Appellee-Plaintiff* | June 24, 2019 <br><br> Court of Appeals Case No. 18A-PL-2526 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Jeffrey D. Todd, Judge <br><br> Trial Court Cause No. 27D01-1505-PL-42 |

**Altice, Judge.**

## Case Summary

[1]     Arletty Ivisa Huber and Steven L. McAtee jointly formed McAtee Excavating Commercial and Residential Services, LLC (the Business) in 2012, with Huber personally financing the substantial start-up costs for the Business and McAtee providing the labor.  At some point, while still a member of the Business, McAtee established a new company, McAtee Foundation Solutions, LLC (the New Business) for which he performed the same type of work using equipment owned by the Business.  He did not account to the Business for the proceeds he received in compensation for his work through the New Business.

[2]     In 2015, Huber filed a complaint against McAtee for breach of fiduciary duty.  She sought both damages and injunctive relief.  Over the next three years, McAtee consistently failed to comply with an agreed preliminary injunction order and to respond to discovery requests, despite court orders to do both.  Huber filed a motion for summary judgment in 2018, along with designated evidence and a memorandum of law.  McAtee did not respond to the motion, designate evidence, or appear at the summary judgment hearing.  The trial court granted summary judgment in favor of Huber and awarded her over $750,000.  The court also entered a preliminary injunction and scheduled a hearing on a permanent injunction.

[3]     After the entry of summary judgment, McAtee retained counsel and filed a number of motions.  Included among these was an emergency motion to

dissolve the preliminary injunction and to dissolve the Business pursuant to Ind. Code § 23-18-9-2, which the trial court granted. Thereafter, Huber and McAtee each filed a motion to correct error. Following a hearing, the trial court denied the motions to correct error.

[4] On appeal, McAtee challenges as inadmissible much of the evidence designated by Huber in support of her summary judgment motion. He also claims that this evidence, even if admissible, was insufficient to make a prima facie showing that she was entitled to summary judgment.

[5] We affirm.

### Facts & Procedural History

[6] The designated evidence establishes that Huber and McAtee formed the Business by entering into an operating agreement (the Operating Agreement) on March 10, 2012. Pursuant to the Operating Agreement, Huber owned 51% and McAtee owned 49% of the Business. The Operating Agreement provided for dissolution of the Business upon certain specified events, including a two-thirds vote of the members or a judicial decree of dissolution pursuant to the Indiana Limited Liability Company Act. There would be, according to the agreement, no automatic dissolution upon the disassociation or withdrawal of a member.

[7] The primary purpose of the Business was to:

> perform foundation, basement, and concrete work; repair cracked, bowed basement walls; foundation repairs; repair leaking basement walls and wet crawl spaces; concrete baking,

> pole barn pads, and augured holes; septic systems, sewer lines, and drain lines; driveways, parking lots, and driveway grading; and top soil, fill dirt, ponds, finish grading and seeding.

*Appellant's Appendix Vol. II* at 83. Huber personally financed all costs for starting the Business, including the down payments for several pieces of excavating equipment. McAtee performed the labor for the Business and funds received on invoices were deposited into the Business's bank account at MutualBank. The Business advertised its services, along with an address and phone number, in the local newspaper.

[8] At some point in 2014, McAtee began performing the same type of work as the Business, utilizing the excavating equipment of the Business and the same address and phone number, but failed to deposit or otherwise account to the Business for the proceeds. He created the New Business in late 2014 and opened a bank account at MutualBank for the New Business on December 18, 2014. Beginning in January 2015, McAtee made significant deposits into this new bank account each month. He did all of this without seeking to dissolve the Business pursuant to the Operating Agreement.

[9] On May 19, 2015, Huber filed the instant complaint, alleging that McAtee was directly competing against the Business in which he remained a member. Huber sought damages and injunctive relief based on her claims of statutory and common law breach of fiduciary duty.

[10] The parties entered into an agreed order on preliminary injunction (the Agreed Order), which the trial court approved on October 21, 2015. The Agreed Order

provided that McAtee "shall be permitted to continue to perform excavating work" and shall use the Business's excavating equipment only pursuant to the terms of the court's order. The Agreed Order set out strict conditions for McAtee's continued excavating work, including:

> a. McAtee shall provide to Huber by October 22, 2015, through their respective counsel, a copy of all estimates for Work that McAtee is presently performing … or for which McAtee will begin performance …, together with any future estimates for Work within 5 business days of providing such an estimate to any prospective customer;
>
> b. McAtee shall provide to Huber within 5 business days … a copy of each and every invoice which McAtee submits to any customer … for any Work performed by McAtee;
>
> c. McAtee shall provide to Huber … a true and accurate copy of any check, or money order, or in the event an invoice is paid in cash, a true and accurate copy of the receipt provided to the customer … for any Work performed by McAtee;
>
> d. McAtee shall provide … names, addresses and phone numbers for each and every customer for whom McAtee shall perform Work …;
>
> e. All net proceeds received by McAtee on after [sic] October 15, 2015 for Work performed by McAtee shall be immediately deposited in the trust account of his counsel … to be distributed 49% to McAtee and 51% to Huber until final disposition of this matter;
>
> f. McAtee shall provide … a full and accurate accounting for all Work he is performing … or will perform … within 5 business

days of receipt of payment by McAtee for all Work performed by McAtee.

*Appellee's Appendix Amended Vol. II* at 2-4. In order to continue using the Business's excavating equipment, the Agreed Order required McAtee to provide "a weekly report on the hours the Excavator, Bobcat and Tractor have been used during the week and the number of miles that the Dump Truck has been driven each week, which report shall include date stamped photographs of such hours and mileage." *Id*. at 4. Further, the order provided: "This Agreement shall be in full force and effect until the Court issues its final judgment on Huber's Complaint, the parties notify the Court of a modification …, or the parties notify the Court of a settlement …." *Id*. at 5.

[11] McAtee ignored the Agreed Order, which resulted in Huber filing a petition for rule to show cause in October 2016. In her petition, Huber alleged that McAtee had not provided any estimates, invoices, or copies of payments. Further, despite their agreement to split the net proceeds of his work during the pendency of the proceedings, no proceeds had been distributed to Huber and Huber believed that no deposits had been made into the trust account. Based on financial documents obtained by Huber through a non-party request for documents, Huber alleged that McAtee had made deposits into the New Business's bank account at MutualBank in the approximate amount of $354,000 since the Agreed Order was issued.

[12] Following a hearing on Huber's petition for rule to show cause, as well as a motion to compel discovery, the trial court issued an order on November 30,

2016. The trial court ordered McAtee to respond to Huber's pending written discovery requests by December 31, 2016. The court also found McAtee in contempt for failing to comply with the Agreed Order. As a result, the court ordered McAtee to immediately surrender possession of the Business's excavating equipment to Huber. As a further sanction for his discovery violations and failure to abide by the Agreed Order, the court ordered McAtee to pay attorney fees in the amount of $1500 to Huber's counsel.

[13]    On January 10, 2017, Huber filed another petition for rule to show cause, alleging that McAtee had failed to respond to discovery requests and had provided no documentation pursuant to the Agreed Order. Following a hearing, the trial court issued an order on March 6, 2017, ordering McAtee to fully comply with all outstanding discovery requests by March 8, 2017 and to comply with all provisions of the Agreed Order. The court also assessed attorney fees against McAtee.

[14]    After a number of continuances, a bench trial was scheduled to start December 5, 2017. On November 28, 2017, McAtee's attorney filed a motion to withdraw appearance and a motion to continue the trial date to give McAtee an opportunity to obtain new counsel.[1] The trial court granted the motion to

---

[1] McAtee's counsel, Tia Brewer, had been found in possession of cocaine, marijuana, and drug paraphernalia in May 2017, which resulted in charges and an eventual guilty plea. *See Matter of Brewer*, 110 N.E.3d 1141 (Ind. 2018) (disciplinary action in which Brewer was suspended from the practice of law in Indiana for at least three years without automatic reinstatement). Due to these personal issues, counsel was absent from her practice for six months and, thus, unaware of the December 2017 trial date until just before she filed the motions to withdraw and to continue.

withdraw that same day and scheduled a hearing on the motion to continue. On December 1, 2017, the trial court continued the trial to May 9, 2018, over Huber's objection.

[15] On December 5, 2017, Huber sent a second request for admissions to McAtee, to which he never responded. Upon motion by Huber and following a hearing at which McAtee failed to appear, the trial court issued an order on March 6, 2018, finding that the second request for admissions and all of its attached documents were deemed admitted as against McAtee. Among these admissions was an admission that McAtee had used the Business's excavating equipment for the benefit of the New Business.

[16] Thereafter, on March 30, 2018, Huber filed a motion for summary judgment and injunctive relief. She designated her own affidavit, along with numerous other supporting documents, and provided the trial court with a detailed memorandum of law in support of her motion. The trial court scheduled a summary judgment hearing for May 4, 2018. McAtee did not respond to the summary judgment motion, designate evidence, or show up at the hearing, which was held in his absence.

[17] On May 10, 2018, the trial court issued its order granting summary judgment in favor of Huber and awarding her over $750,000 in damages. The damage amount was calculated by applying Huber's 51% interest to amounts deposited into the New Business's bank account between December 2014 and October 2017, which totaled nearly $1.5 million. Additionally, the trial court entered a

preliminary injunction enjoining McAtee from "continuing to perform foundation, basement, and/or concrete work on behalf of himself or any business." *Appellant's Appendix Vol. II* at 29-30. The court scheduled a permanent injunction hearing for June 8, 2018, which was later continued.

[18] McAtee retained counsel after the entry of summary judgment. On June 11, 2018, he filed a motion to reconsider (improperly designated as a motion to correct error[2]), arguing that Huber failed to designate admissible evidence sufficient to make a prima facie showing that she was entitled to summary judgment. Thereafter, on July 3, 2018, McAtee filed an emergency motion to dissolve the preliminary injunction and to dissolve the Business pursuant to Ind. Code § 23-18-9-2,[3] which the trial court granted on July 20, 2018. By the same order, the trial court vacated the permanent injunction hearing.

[19] Both parties timely filed motions to correct error, with Huber challenging the dissolution of the Business and McAtee challenging the summary judgment order. The trial court summarily denied both motions following a hearing on September 19, 2018. McAtee now appeals. Additional information will be provided below as needed.

---

[2] "[M]otions to correct error are proper only after the entry of final judgment; any such motion filed prior to the entry of final judgment must be viewed as a motion to reconsider." *Snyder v. Snyder*, 62 N.E.3d 455, 458 (Ind. Ct. App. 2016).

[3] On application by a member, a court "may decree dissolution of the limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the … organization or operating agreement." *Id.*

## Standard of Review

[20] We review a summary judgment ruling de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). That is, drawing all reasonable inferences in favor of the non-moving party, summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C).

> A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion.

*Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975 (Ind. 2005); *see also Knowledge A-Z, Inc. v. Sentry Ins.*, 857 N.E.2d 411, 419 (Ind. Ct. App. 2006), *trans. denied.*

[21] In ruling on summary judgment, a court may consider only admissible evidence designated to the court. *See Hays v. Harmon*, 809 N.E.2d 460, 465-66 (Ind. Ct. App. 2004) ("Because the court may consider only admissible evidence when ruling on a motion for summary judgment, inadmissible hearsay statements cannot create a genuine issue of material fact."), *trans. denied.* Further, affidavits designated on summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

stated therein." T.R. 56(E). Although mere assertions of law or opinions will not suffice, "[a]n affidavit need not contain an explicit recital of personal knowledge when it can be reasonably inferred from its contents that the material parts thereof are within the affiant's personal knowledge." *Kader v. State, Dep't of Correction*, 1 N.E.3d 717, 723-24 (Ind. Ct. App. 2013) (quoting *Decker v. Zengler*, 883 N.E.2d 839, 844 (Ind. Ct. App. 2008), *trans. denied*).

### Discussion & Decision

[22] On appeal, McAtee seeks to have the trial court's summary judgment order reversed. He contends that much of the designated evidence was inadmissible and, thus, improperly considered by the court and that Huber failed to present a prima facia case establishing her entitlement to summary judgment.

[23] We turn first to his evidentiary arguments. McAtee contends that Huber's affidavit (Exhibit A) "was replete with speculation and conclusory statements not based upon her personal knowledge." *Appellant's Brief* at 12. Despite this broad assertion, however, McAtee challenges only the following three paragraphs of the affidavit:

> 11. McAtee eventually began performing the same type of work as the Business utilizing the Excavating Equipment and failed to deposit or otherwise account to the Business for the proceeds he received in compensation for completing said work.

> ****

16. McAtee began depositing the proceeds of his work into a new account in the new LLC's name held by MutualBank as account…. Attached is a true and accurate copy of the "New Account Information" form for this account along with the applicable Business Records Certification attached hereto and incorporated as Exhibit "J".

17. True and accurate copies of statements of [the New Business's] MutualBank account are attached hereto and incorporated herein, along with the applicable business records certifications, as Exhibit "K".

*Appellant's Appendix Vol. II* at 84-85.

[24] Further, McAtee challenges the admissibility of three other items of designated evidence – an advertisement in the local newspaper for the New Business from November 2016 (Exhibit I) and bank records from MutualBank for the New Business (Exhibits J and K). McAtee argues that the documents contained in these exhibits constitute hearsay and do not fall within the business records exception to the hearsay rule, Ind. Rule of Evidence 803(6), because the business records certification attached to each of the exhibits was deficient.

[25] On its face, the evidence designated by Huber with her motion for summary judgment appears properly submitted and admissible. Her affidavit presents facts generally based on personal knowledge and does not rest on mere assertions of law or opinions. Moreover, Huber's personal knowledge regarding McAtee's new business pursuits using the Business's excavating equipment for his own personal gain can be reasonably inferred. These statements are also supported by other designated evidence referenced in her

affidavit and by McAtee's own admission that he used the Business's excavating equipment for the New Business. Indeed, the Agreed Order entered early in the case allowed McAtee to use this equipment and continue doing excavating work.

[26] McAtee's belated and rather technical attack of this evidence is not well taken. He had every opportunity to challenge Huber's designated evidence either by designating his own evidence or moving to strike her evidence at or before the summary judgment hearing. Instead, McAtee chose not to participate in the summary judgment proceedings, which occurred just days before the scheduled trial. He cannot now be heard to complain that this evidence was considered by the trial court on summary judgment. *See Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) ("defendants did not file any motion to strike or object to any portions of the Cohen affidavit during the summary judgment proceedings" and Supreme Court "declin[ed] to excuse the lack of timely objection"); *see also Doe v. Shults-Lewis Child & Family Servs., Inc.*, 718 N.E.2d 738, 749 (Ind. 1999) ("An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and formal defects are waived in the absence of a motion to strike or other objection.") (quoting *Gallatin Group v. Central Life Assurance Co.*, 650 N.E.2d 70, 73 (Ind. Ct. App. 1995)); *Lewis v. State*, 511 N.E.2d 1054, 1057 (Ind. 1987) (evidentiary challenge raised for the first time in motion to correct error was not timely raised at trial and, thus, allegation of error was waived for purposes of appellate review); *Matter of S.L.*, 599 N.E.2d 227, 229

(Ind. Ct. App. 1992) ("A party may not raise an issue for the first time in her motion to correct errors or on appeal.").

[27] In the alternative, McAtee argues that even if all of the designated evidence is admissible, it does not establish a prima facie case for Huber. He contests both the conclusion that he breached a fiduciary duty and the amount of damages.

[28] To obtain summary judgment on her breach of fiduciary duty claim, Huber's designated evidence needed to show: "(1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Rapkin Grp., Inc. v. Cardinal Ventures, Inc.*, 29 N.E.3d 752, 757 (Ind. Ct. App. 2015), *trans. denied*.

[29] As a closely-held corporation, the members of the Business – Huber and McAtee – had a fiduciary duty to deal fairly not only with the corporation but with each other. *See DiMaggio v. Rosario*, 52 N.E.3d 896, 905 (Ind. Ct. App. 2016), *trans. denied*. "Shareholders in a closely-held corporation stand in a fiduciary relationship to each other, such that they must deal fairly, honestly, and openly with the corporation and with their fellow shareholders." *Id*. at 907. This includes "a fiduciary duty not to appropriate to his own use a business opportunity that in equity and fairness belongs to the corporation." *Id*.

[30] The designated evidence establishes that Huber and McAtee created the Business by executing the Operating Agreement. The parties, as sole members of the Business, started operating under this agreement in early 2012, with Huber expending significant personal funds to start the Business and McAtee

providing the labor. Around late 2014, McAtee began using the Business's excavating equipment for his own business pursuits without communicating to Huber a desire to dissolve the Business or otherwise initiating dissolution under the express terms of the Operating Agreement. McAtee eventually formed the New Business, which provided the same services and used the same address and phone number as the Business. McAtee deposited approximately $1.5 million dollars into the New Business's bank account between December 2014 and October 2017.[4] These facts amply establish a prima facie case that McAtee owed Huber a fiduciary duty, breached that duty, and caused her harm.

[31] On appeal, McAtee argues that his actions manifested his intention to abandon the Business and that once Huber knew that he had abandoned the Business, which he claims was well before the complaint was filed, he became free to pursue his own business interests. This argument suffers from, at least, two fatal flaws. First, the argument was not asserted below – not even untimely in his motion to correct error. Therefore, this new issue is waived. Second, the Operating Agreement provided for dissolution of the Business only upon certain specified events, including a vote of the members or a judicial decree of dissolution. There would be, according to the Operating Agreement, no automatic dissolution upon the disassociation or withdrawal of a member.

---

[4] Much of this time, from October 2015, the Agreed Order was in effect, which allowed McAtee to continue using the excavating equipment to perform the same work as the Business but with several caveats, including that funds were to be fully accounted for and deposited in a trust account. McAtee, however, wholly failed to comply with the Agreed Order.

Here, McAtee did not expressly seek dissolution until he filed his emergency motion to judicially dissolve the Business in July 2018. Therefore, he cannot be heard to complain, belatedly, that he did not owe a fiduciary duty to Huber after he abandoned the Business by his actions.[5]

[32] Finally, McAtee challenges the amount of the damages award. He contends that Exhibits J and K, the bank records for the New Business, were insufficient to establish that Huber was entitled to damages in the amount of $750,220.46. In this regard, McAtee observes that the bank records do not establish the source of the deposits or whether the deposits were revenue or profits.

[33] Exhibit J establishes that McAtee opened a new bank account at MutualBank for the New Business on December 18, 2014. He listed himself as the president and Kathie L. McAtee as the vice president of the New Business. With regard to the business entity information on the document, McAtee used the same address as that of the Business and indicated that the filing date in Indiana for the New Business was August 22, 2014.

[34] Exhibit K contained account statements for the New Business from December 2014 through October 2017. The statements documented total deposits for the New Business of nearly $1.5 million dollars over this time period, of which the

---

[5] McAtee's reliance on *DiMaggio* is misplaced. In that case, Rosario and DiMaggio had an oral contract with no specific agreement regarding dissolution of their closely-held corporation. Rosario eventually sent a letter of abandonment to DiMaggio and made clear his commitment to abandoning the joint business venture. When Rosario then acted consistently with that intent, DiMaggio acquiesced and did not file suit against Rosario for more than six years. We find the facts of *DiMaggio* distinguishable from the case at hand.

trial court awarded Huber 51%. The record establishes that Huber's attempts to obtain additional financial information, such as invoices and receipts for the New Business, were thwarted at every turn by McAtee. He did not respond to discovery requests and did not comply with the Agreed Order. His blatant defiance of court orders cannot be countenanced, and his claim that Huber failed to establish his actual profits from these deposits is disingenuous.

[35]    McAtee chose not to respond to the summary judgment motion or to designate evidence regarding damages. The trial court's damage award was within the scope of the evidence, and we reject McAtee's invitation to assume that there exists evidence regarding expenses that is nowhere found in the record.

[36]    McAtee pleads in his reply brief: "McAtee simply asks for his day in court. He seeks the chance to have this matter returned to the Trial Court so that it may be litigated on the merits." *Appellant's Reply Brief* at 7. We observe, however, that McAtee had ample opportunity for his day in court but rather chose to snub the judicial process for years. He is not entitled to a second chance.

[37]    Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.